James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

AETNA FINANCE COMPANY, Defendant.

C. A. No. 1885.

United States District Court
D. Rhode Island.

Sept. 7, 1956.

Stuart Rothman, Solicitor, Washington, D. C., Thomas L. Thistle, Regional Atty., Boston, Mass., Albert H. Ross, Atty., U. S. Dept. of Labor, Boston, Mass., for plaintiff.

Matthew W. Goring, Providence, R. I., Harold H. Levin, New York City (Charles S. Kelly and Floyd E. Britton, Chicago, Ill., of counsel), for defendant.

DAY, District Judge.

In this action the plaintiff seeks a judgment enjoining the defendant from further violating the provisions of Sections 15(a) (2) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq.

The complaint charges the defendant with employing employees in its office in Providence, Rhode Island, in the production of goods for interstate commerce and in interstate commerce as defined in said Act for a workweek in excess of forty hours without compensating them for their employment in excess of forty hours at a rate not less than one and one-half the regular rates at which they were employed.

In its answer the defendant admits that it has not complied with the provisions of Sections 7 and 11(c) of said Act with respect to the employees involved herein and asserts that none of said employees was or is engaged in the production of goods for interstate commerce or in interstate commerce within the meaning of said Act and further, that said office is a retail service establishment under the provisions of Section 13(a) (2) of said Act, as amended, 29 U.S.C.A. § 213(a) (2) and that therefore, said employees are exempt from coverage of the Act, as amended.

By stipulation the defendant has admitted non-compliance with the overtime and record keeping provisions of said Sections 7 and 11(c) of the Act and the parties have agreed upon the salient

and material facts as to the defendant's operations.

These facts may be summarized as follows: The defendant operates a small loan business in eighty-three offices located in sixty-five cities in twenty states. Its home and main office is located in St. Louis, Missouri. It is licensed to do business in the State of Rhode Island under the so-called "Small Loan Law" of that state, Gen.Laws 1938, c. 149, § 1 et seq. It employs approximately seven hundred employees of whom six hundred fifty are local branch personnel. During the fiscal year ending September 30, 1955, defendant made 170,756 loans in the amount of $52,194,217.95. As of that date the total amount of assets employed in the business of the defendant was $35,937,-865.85.

As of the filing of this complaint there were thirteen employees in the defendant's Providence office. They were classified as follows, viz.: a manager, three assistant managers, three outside representatives, five female employees, classified as bookkeeper-cashiers, and a merchant representative.

At the commencement of the trial the parties stipulated orally on the record that the manager of the defendant's Providence office was exempt from the overtime requirements of the Act by virtue of Section 541.1 of the Regulations of the Wage and Hour Division, 29 C.F.R. § 541.1, and hence no injunctive relief as to him is now sought by the plaintiff. On August 1, 1955, there were outstanding 3,600 loans which had been made by the personnel in the Providence office, 168 of which were to residents of either Connecticut or Massachusetts.

The parties have also stipulated that the employees in the Providence office are paid semi-monthly by checks sent from the home office of the defendant. All forms, stationery, envelopes, supplies and pencils used there are sent to that office from the home office. Whenever the manager of the Providence office finds a need for funds either to make loans or to pay any other expenses, not paid directly by the home office, he requests and obtains such funds from the home office. Whenever the balance to the credit of the defendant in its Providence banking depository exceeds $2,000 a check for such excess is drawn by the manager of the Providence office and sent to the home office of the defendant. During the two year period prior to the filing of this complaint there were ninety-four such remittances amounting in the aggregate to approximately $669,000.

Persons desiring loans from the defendant at its Providence office are interviewed by the local manager or one of his assistants. Thereupon one of the local employees attempts to verify the facts related in the application for a loan. In this process the manager, assistant manager and other employees regularly utilize the telephone, telegrams and the mails. In addition to the continuous remittances of money by the manager of the local office to the home office there is a continuous, regular flow of reports, records, documents and correspondence between the two offices. Each day the local office sends to the home office a detailed statement of its daily operations. This statement consists of (1) a cash report, (2) a payment register, (3) a daily cash balance sheet and (4) a daily bank deposit ticket. In addition, each week the loan register and the delinquency reduction report are sent to the home office. Numerous other reports are sent regularly although less frequently.

The defendant at its home office also maintains a constant audit of the operations at its office in Providence by examining all new loan applications approved in that office. In 1955, 952 such loan applications with the accompanying papers, such as list of household goods, car appraisal sheet and co-maker applications, were forwarded to the home office of the defendant.

The outside representatives employed in the local office interview seriously delinquent borrowers, including those who reside in Connecticut and Massachusetts, reporting to the Providence office by telephone, and investigate the credit standing of applicants for loans. In the

course of their duties they visit places outside Rhode Island about six times a month and regularly spend about 4.2 to 4.6% of their hours of employment outside that state.

Assistant managers use the telephone to contact delinquent borrowers who reside in Connecticut and Massachusetts, making approximately twenty such calls during each workweek. They also complete applications for loans and prepare information for the delinquency report. In addition, they verify credit information furnished by applicants by making telephone calls to individuals in Connecticut and Massachusetts as well as in Rhode Island and dictate letters some of which are sent to points outside of Rhode Island.

The bookkeeper-cashiers type loan payment records and other information requisite for the completion of the loan register and loan journal, assist in the preparation of semi-monthly and monthly reports, make up and type local bank deposit slips, take and transcribe dictation, assist in the preparation of outgoing mail, check credit information by telephone, type notices to borrowers requesting payment of overdue accounts, address mail solicitation from the local office and stuff and mail advertising material, 4.2 to 4.6% of which is sent to prospects residing outside of Rhode Island. They also answer the telephone and open the mail which includes approximately 1,080 monthly remittances by borrowers. In the course of their duties all these employees regularly use the telephone, telegrams and mails.

The merchant contact representative calls on merchants to solicit business for the defendant from their customers and in doing so regularly visits Attleboro in the Commonwealth of Massachusetts once or twice each month.

In addition to their stipulation as to the operations of the defendant and the duties of the defendant's employees involved herein the parties have agreed that the testimony and exhibits in the case of Mitchell v. Household Finance Corp., 3 Cir., 208 F.2d 667, relating to the question whether the services rendered by a branch small loan office are recognized as retail in the financial industry may be considered as evidence in this case. This stipulation is predicated upon the agreement of the parties hereto that the operations of the small loan office at Lancaster, Pennsylvania, involved in that case were sufficiently similar to those of the Providence office of the defendant to make such evidence relevant in the controversy.

In addition to this evidence the plaintiff presented the testimony of Dr. Seymour Harris, Professor and Chairman of the Department of Economics of Harvard University and a consulting economist to both industry and government. In substance, he testified that the retail-wholesale concept had no application to the lending of money and that the local office of the defendant was not engaged in the selling of services. And finally, he testified that he was in general agreement with the testimony of Professor Whittlesey and Mr. Melincoff whose testimony is a part of the record in the Household case admitted herein by stipulation of the parties.

In contradiction to the position taken by Professor Harris, the defendant presented the testimony of Dr. Morris R. Neifeld in addition to that offered by the defendant in the Household case. Dr. Neifeld is Vice-President and Director of the Beneficial Management Corporation, the managing corporation of the Beneficial Finance Company, a small loan company, and the author of several books and numerous articles on finance and consumer credit. He testified that in the financial industry there was a "concept of a retail and wholesale segment". He said that wholesale lending had to do with the lending of usually large sums of money to business or government for use in industrial and commercial activities. On the other hand, retail financing occurs, he stated, when the credit is extended to the individual in his capacity as household, family or individual consumer and the proceeds of the loan are used up in consumption. He also stressed

that in retail financing the amounts loaned are relatively small and are repaid in instalments over a period of from twelve to twenty-four months. He further testified that in the industry the local office of the defendant was recognized as a service establishment. In addition, he agreed with the testimony of the defendant's witnesses in the Household case.

The first issue to be determined by me is—Are the defendant's employees in its Providence, Rhode Island office "engaged in commerce or in the production of goods for commerce" within the meaning of the Fair Labor Standards Act of 1938, as amended? If they are engaged in commerce or in the production of goods for commerce then the additional issue is presented whether the local office of the defendant is a retail service establishment under the provisions of Section 13 (a) (2) of said Act, as amended, which exempts the employees of such establishments from the coverage of the Act.

At the outset it may be noted that coverage of an employee under the Fair Labor Standards Act depends upon the activities of the particular employee concerned. A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656; Mabee v. White Plains Publishing Co., 327 U.S. 178, 66 S.Ct. 511, 90 L.Ed. 607; Mitchell v. C. W. Vollmer & Co., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Mitchell v. Brown, 8 Cir., 224 F.2d 359.

 The fact that the employer is engaged in interstate commerce while not decisive is certainly a relevant fact to be considered in determining whether a particular employee is engaged in commerce within the Act. In my opinion the sum total of the business activities of the defendant as stipulated by the parties does constitute interstate business and the defendant is engaged in commerce as that term is used in the Act. United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 64 S.Ct. 1162, 88 L.

Ed. 1440; Mitchell v. Household Finance Corp., supra.

██ In contending that the employees in its Providence office are not covered by the Act the defendant relies heavily on the authority of the opinion in Mitchell v. Household Finance Corp., supra. The plaintiff, however, contends with equal vigor that the instant case is on its facts clearly distinguishable from that case, and furthermore, that the opinion therein is no longer to be followed in view of subsequent decisions of the Supreme Court of the United States. A reading of the opinion in that case discloses that the Court of Appeals found that the activities of the employees involved therein were necessary to the conduct of the business of the defendant only in the Lancaster, Pennsylvania area, that none of these employees did any work outside the Lancaster area, and that none dealt with any borrower from other areas. In the present case it is stipulated that (1) approximately 4.2 to 4.6% of the borrowers to whom loans were granted at the Providence office reside outside the State of Rhode Island, (2) the attendant processing of these loans involves a substantial amount of work by the employees involved herein, (3) each loan application and its accompanying papers are sent to the home office, (4) clerical employees are employed in stuffing and mailing advertising matter which is regularly shipped directly across state lines, (5) outside representatives and the merchant contact representative during the course of their duties regularly travel across state lines and (6) non-exempt assistant managers during the course of their duties regularly utilize the telephone to call out of state delinquents. Here the instrumentalities of interstate commerce are used by the local employees, not only to keep the defendant's home office advised of daily activities at Providence, but also to communicate with out of state borrowers and prospective borrowers.

In contrast with the situation in Household it cannot be said that the activities of the employees in the Providence area

are confined to that area or that they are isolated local activities. They participate actively and directly in the defendant's interstate business. Finding as I must that the instant case is distinguishable on its facts from Household it becomes unnecessary for me to consider the plaintiff's other contention that the opinion in Household may no longer be relied upon.

In the case of Mitchell v. C. W. Vollmer & Co., supra, where the question of coverage was concerned, the Supreme Court said, 349 U.S. at page 429, 75 S.Ct. at page 862:

> "We are dealing with a different Act of another vintage [i. e., the Fair Labor Standards Act rather than the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.]— one that has been given a liberal construction from A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638, to Alstate Construction Co. v. Durkin, 345 U.S. 13, 73 S.Ct. 565, 97 L.Ed. 745. The question whether an employee is engaged 'in commerce' within the meaning of the present Act is determined by practical considerations, not by technical conceptions. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 128, 130, 63 S.Ct. 494, 496, 497, 87 L.Ed. 656. The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity. See McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 1251, 87 L. Ed. 1538. * * *"

Applying these broad guiding principles in the instant case, I am of the opinion that the employees involved herein are engaged in commerce within the meaning of the Act. Their work is so directly and vitally related to the conduct and furtherance of the defendant's nationwide business as to be a part of it.

Their work cannot be said to be isolated local activity.

Concluding as I do that these employees are engaged in commerce within the terms and spirit of the Act, there remains the issue whether they are exempt from coverage as employees employed by a retail or service establishment under the provisions of Section 13(a) (2) of the Act, as amended. This section reads as follows:

> "Sec. 13(a). The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry".

In the present case the plaintiff conceded that more than 50 per cent of the funds loaned at the Providence office are loaned to residents of Rhode Island. It contends, however, that said office is not a "retail or service establishment" within the meaning of Section 13(a) (2), as amended, and that it does not qualify for the exemption provided thereby.

While it is abundantly clear that it is the obligation of the courts to construe the Act liberally, it is equally clear that it is their duty to strictly construe the exemptions thereof which deny its benefits to certain employees. To avail itself of the exemption the duty is upon the defendant to bring itself plainly and unmistakably within the terms and spirit of the exemption specified in section 13(a) (2). A. H. Phillips, Inc., v. Walling, 324 U.S. 490, 498, 65 S.Ct. 807, 89 L.Ed. 1095; Calaf v. Gonzalez, 1 Cir., 127 F.2d 934; Armstrong Co. v. Walling, 1 Cir., 161 F.2d 515.

Without reviewing in detail the testimony introduced by the plaintiff and the defendant in the Household case and that of Dr. Harris and Dr. Neifeld and giving to the word "service" its broadest connotation, I agree with the conclusion, subject to the same qualifications, expressed by Chief Judge Kirkpatrick in Tobin v. Household Finance Corp., D.C. E.D.Pa., 106 F.Supp. 541, that the local offices of small loan companies are regarded in the financial industry as retail service establishments.

However, I do not believe that such industry recognition is decisive of the issue before me. The recognition in the industry test appears in the Act for the first time in the 1949 amendment which is now section 13(a) (2) of the Act. The legislative history of this amendment shows that it was designed to accomplish a particular objective. Its purpose was to abolish the so-called consumer test which up to that time was deemed determinative of whether a sale of goods or services was retail.

Senator Holland, the sponsor of the amendment in the Senate, described the amendment as a "clarification" to prevent a sale from being classified as nonretail simply because it was for business use rather than for personal consumer use. Stating that "the decisions of the United States Supreme Court had cast considerable doubt upon the application of the exemption to any retail or service establishment * * *, making some sales to business users", he explained the limited purpose of the amendment in the following language:

"The amendment clears up that doubt by exempting the establishments which are traditionally regarded as retail. It is only in the sense that it clarifies such doubt that the amendment can be regarded as expanding the present exemption. But in a real sense it is not expanding the exemption at all but simply confirming it for those establishments which the Congress always intended to exempt." 95 Cong.Rec. 12506 (1949).

In similar fashion the House Managers' Report sets forth the limited purpose of the amendment, viz.:

"This clarification is needed in order to obviate the sweeping ruling of the Administrator and the courts that no sale of goods or services for business use is retail. See Roland Electrical Co. v. Walling, 326 U.S. 657 [66 S.Ct. 413, 90 L.Ed. 383]; McComb v. Deibert, [D.C.] E.D.Pa.1949 [117 F.Supp. 41]; McComb v. Factory Stores [Co., D.C.] N.D.Ohio 1948, 81 F.Supp. 403." 95 Cong.Rec. 14931 (1949).

In addition, the legislative history of this amendment shows conclusively that members of Congress were repeatedly assured that the amendment would not expand the classes of exempt establishments under the then existing law. And it had been the consistent interpretation of the Administrator since his original interpretative bulletin that the exemption provided by the existing law did not include personal loan companies. (1941 W.H. Man. 270, 272). In enacting the amendment it is clear that Congress considered there were certain enterprises to which the concept of retailing was inapplicable.

Senator Holland, on the floor of the Senate answered certain specific questions, among which was the following:

"Question. Would the proposed amendment have the effect of exempting banks, insurance companies, credit companies, newspapers, telephone companies, gas and electric utility companies, telegraph companies, etc.?

"Answer. No. These types of business are not considered exempt under the retail or service establishment exemption in the present law because the selling and servicing which they do are not generally considered to be retail. The proposed amendment would do nothing to change their nonexempt status under the retail and service establishment exemption. To the extent Congress intended to exempt any of

these businesses it created special exemptions for them. See, for example, Section 13(a) (8) (exemption for small weekly and semi-weekly newspapers); Section 13(a) (9) (exemption for local trolleys and local motor bus carriers); Section 13(a) (11) (exemption for switchboard operators of small telephone exchanges)." 95 Cong.Rec. 12505 (1949).

To the same effect is the House Managers' Report attached to the Conference Report, which stated:

"The amendment does not exempt banks, insurance companies, building and loan associations, credit companies, newspapers, telephone companies, gas and electric utility companies, telegraph companies, etc., because there is no concept of retail selling or servicing in these industries. Where it was intended that such businesses have an exemption one was specifically provided by law (sec. 13(a) (8) (exemption for small newspapers), sec. 13(a) (11) (exemption for switchboard operators of small telephone exchanges))." 95 Cong.Rec. 14932, (1949).

And in the Senate Report we find the following:

"The Conference agreement exempts establishments which are traditionally regarded as retail * * * and establishments which do not now have the exemption because the selling or servicing in which they are engaged is not considered to be retail (such as banks, insurance companies, credit companies, newspapers, telephone companies, gas and electric utility companies, telegraph companies, etc.) will not become retail or service establishments under the provisions of the Conference agreement." 95 Cong.Rec. 14877 (1949).

In my opinion it is clear that Congress in enacting the amendment did not intend to expand the retail establishment exemption from coverage under the Act. Its purpose and intention were to clarify the old law and to abolish the old test as to what is "retail". Boisseau v. Mitchell, 5 Cir., 218 F.2d 734.

In both the House Managers' Report and Senate Report "credit companies" are specifically listed as being establishments which would not become retail or service establishments, exempt under the amendment. The defendant, however, argues that the words "credit companies" as used in these reports were not meant to include small loan companies (the sole activity of which is to lend money on credit) but rather are to be taken to mean only "commercial credit companies", which make large loans to business establishments. I find no merit in this contention. To so hold would be to disregard the commonly and ordinarily understood meaning of the words "credit companies" and to give to the exemption a broad rather than a strict construction contrary to the purpose and spirit of the Act and contrary to the well settled rule that the exemptions which deny its benefits to certain employees must be strictly construed. Calaf v. Gonzalez, supra; Armstrong Co. v. Walling, supra.

In my opinion the defendant has failed to show that the employees of its Providence office who are engaged in commerce plainly and unmistakably fall within the terms or spirit of the exemption specified in section 13(a) (2) of the Act, as amended. In the absence of such showing the exemption is inapplicable to them.

Judgment shall be entered for the plaintiff and an injunction shall issue as prayed for.