**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,**

v.

**C. B. BLAND, individually and doing business as C. B. Bland Leather Craft, Appellee.**

**No. 16246.**

United States Court of Appeals
Fifth Circuit.

March 15, 1957.

Sylvia S. Ellison, Atty., Dept. of Labor, Washington, D. C., Earl Street, Reg. Atty., Dept. of Labor, Dallas, Tex., Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., Stuart Rothman, Solicitor, Eugene R. Jackson, U. S. Dept. of Labor, Washington, D. C., for appellant.

C. H. Tupper, Jr., Clyde Vinson, San Angelo, Tex., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

This appeal presents the question whether, in a suit by the Secretary of Labor for injunction for alleged violation of the Fair Labor Standards Act,[1] the District Court was clearly erroneous in its finding that there had been no violation of the wage and hour provisions of the Act; and whether it committed error in refusing injunction upon its finding that there had been no intentional violations of any other requirements of the Act.[2]

Appellant, the Secretary of Labor, brought the action under Section 17 of the Act[3] against Appellee Bland, who conducted a small business subject to the Act in which leather bags, purses and other similar goods were manufactured. The Court below entered judgment denying the injunctive relief prayed for upon the finding "that no adequate cause is shown in accordance with applicable principles of equity for granting an injunction against defendant herein."

Appellant contends that the Court's finding that there were no violations of the wage and hour provisions of the Act were clearly erroneous but our reading of the record convinces us that the finding was justified. He contends further that it should be inferred from the quoted findings of the Court that there had been unintentional violations of the record-keeping and other ancillary requirements of the Act. It seems more likely that the Court was unable to determine definitely whether the records, kept by the individual employees on a piece-work basis, were adequate to comply with the Act and the regulations supplementing it.[4]

1. 29 U.S.C.A. § 201 etc.

2. The following findings of fact by the Court are pertinent:

   "4. That the evidence does not establish any intentional violation of Sections 6 and 15(a) (2) of the Act, and the evidence shows that the employees were compensated in accordance with provisions of this Act.

   "5. That the evidence does not establish any intentional violation of Section 7 and 15(a) (2) of the Act, and the evidence shows the employees were compensated in accordance with the provisions of this Act.

   "6. That the evidence does not establish any intentional violation of Sections 11 (c) and 15(a) (5) of this Act.

   "7. That the evidence does not establish any intentional violation of Section 15(a) (1) of this Act * * *

   "9. That there is no reasonable likelihood that defendant will violate this Act in the future."

3. 29 U.S.C.A. § 217.

4. It was clear to the trial judge that appellant had brought his records into full compliance with the Act's requirements before the time of trial.

But we do not consider these considerations of controlling importance. Even assuming appellant's contentions to be sound in both instances, the Court would have been justified in either granting or denying injunctive relief under the broad discretion lodged in it by accepted equitable principles. Mitchell v. Hodges Contracting Co., 5 Cir., 1956, 238 F.2d 380, 381.

The trial Court evidently reached the conclusion that more could be accomplished towards enforcement of the law and towards bringing appellant into cooperative conformity with its provisions by withholding the drastic remedy of injunction than by using it.[5]

The nature of injunctive relief is that it is prospective, prophylactic, preventive,—not punitive. By bringing about a better attitude on appellant's part towards the Act, and his plighted purpose to obey it scrupulously and ungrudgingly, the Court below was using its equity powers in consonance with their best traditions.

The problem before the Court below did not involve litigation between two private individuals only; it related primarily to the business of the public, and the public interest was entitled to primary consideration.[6] A labor controversy was presented to the Supreme Court in Virginian Railway Co. v. System Federation No. 40, Railway Employees, 1937, 300 U.S. 515, at page 552, 57 S.Ct. 592, at page 601, 81 L.Ed. 789, when it gave expression to this principle: "More is involved than the settlement of a private controversy without appreciable consequences to the public * * * Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved * * *"

The same ideas were expressed by the Supreme Court[7] in dealing with the enforcement of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq., in a case wherein the problem presented was quite similar to that before the Court in this case. Hecht involved a prayer for injunctive relief where a spot check of seven out of more than one hundred departments of a large store revealed four thousand five hundred violations of the law. After a full hearing, the District Judge[8] denied injunction pursuant to its general equity powers: "In a case such as this an injunction should not issue unless thereby better compliance with law may be enforced * * * and in my judgment an injunction would not be in the public interest * * *" The Court of Appeals for the District of Columbia[9] reversed

---

5. The eighth finding of fact of the Court below reads thus: "Defendant testified that he now understands this Act. Defendant promised that he would not violate this Act, and that he would not (directly or indirectly) interfere with its administration or execution and that he would not (directly or indirectly) interfere with any representative of the government engaged in carrying out their duties under this Act".

This finding was made by the Court after an extensive questioning of appellant while he was on the witness stand. The Court stated in its oral opinion, "There are clashes. He resents the authority of the government over his business and makes very unfortunate statements. And maybe there were some unfortunate statements made to him."

It is likely that the Court felt that appellant's solemn promise made in open Court to one who trusted him would accomplish more towards law-compliance than would an injunction in the hands of those with whom there had been clashes.

6. "The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction. * * *" Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971.

7. Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754.

8. Brown v. Hecht Co., 49 F.Supp. 528, 532.

9. Brown v. Hecht Co., 1943, 78 U.S.App. D.C. 98, 137 F.2d 689.

on the theory that the District Judge had given too wide a sweep to traditional equity powers. The Supreme Court granted certiorari [10] and reversed the action of the Court of Appeals approving what the District Court had done and using this language:

"We are dealing here with the requirements of equity practice with a background of several hundred years of history. * * * The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. * * *" 321 U.S. at page 329, 64 S.Ct. at page 591.

"For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases." 321 U.S. at page 331, 64 S.Ct. at page 592.

The District Judge, having the long-term responsibility for the enforcement of this law and others like it in a large district in Texas, and being acquainted with local conditions and having observed appellant and the government agents as the contest before him unfolded, was in better position than we are to assess and solve this problem. We are not willing to set aside the discretion employed by him in fashioning his decree to serve the interest of the litigant and the public. The judgment is

Affirmed.

10. 320 U.S. 727, 64 S.Ct. 81, 88 L.Ed. 429.