**James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Charles H. BLANCHARD, Defendant.**

**Civ. A. No. 942.**

United States District Court
N. D. Florida,
Pensacola Division.

Dec. 23, 1958.

Beverly R. Worrell, Regional Atty., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

R. A. Hepner, Pensacola, Fla., for defendant.

CARSWELL, Chief Judge.

### Findings of Fact

1. This is an action brought by James P. Mitchell, Secretary of Labor, United States Department of Labor, to enjoin

the defendant, Charles H. Blanchard, from violating the minimum wage, overtime and record-keeping provisions of the Fair Labor Standards Act of 1938 (Act of June 25, 1938, c. 676, 52 Stat. 1060, as amended; Title 29 U.S.C.A. § 201 et seq.).

2. The defendant, Charles H. Blanchard, resides in Pensacola, Florida, within the jurisdiction of this Court, and is now, and at all times hereinafter mentioned was, the sole owner and operator of a place of business in that city, where he is engaged in the general contracting business with twenty or thirty employees.

3. The defendant engaged in a great many construction endeavors prior to and during the years 1957 and 1958. All of the construction work accepted and engaged in by the defendant was done within the confines of the State of Florida, and of the many construction endeavors undertaken and completed by the defendant during said time, only seven were covered by the provisions of the Act, and it was stipulated that the employees of defendant who engaged in work on said seven projects were not paid time-and-a-half in accordance with the requirements of the Act; the type of job, the place thereof, and the beginning and completion dates of said seven jobs being as follows:

a. At Air Traffic Control Tower at Eglin Air Force Base, Florida; February 1957–January 1958.

b. Emergency Lighting Facilities at Forrest Sherman Field, Naval Air Station, Pensacola, Florida; July 1957–November 1957.

c. Emergency Reservoir for the Chemstrand Corporation near Pensacola; September 1957–October 1957.

d. Repair and Alterations to J. P. Fuel System, Saufley Field, NAAS, near Pensacola; April 1957–October 1957.

e. Pumping System for J. P. Fuel Tanks, Whiting Field, NAAS, near Pensacola; June 1957–November 1957.

f. Supply Building (No. 603, one of five buildings in contract) Pensacola; December 1957–October 1958.

g. Earth moving related to the deepening and widening of Pensacola Harbor Channel from October 1958 to date of trial.

4. Of the seven contracts admittedly in violation, five of said contracts had been completed prior to the filing of this action (a, b, c, d, e), and one of the contracts had been started after the filing of this action (g).

5. When a representative of the Labor Department first contacted defendant in 1956, investigation was conducted of the defendant's books and records over a period of several days with his voluntary consent. There was at this time some discussion between the defendant and the Department representative, with the defendant inquiring as to the purpose of the investigation and being advised that it was in reference to the subject Act. Defendant then contended that none of the jobs in which he was involved were covered by the Act and inquired for specific reference to any which were considered to be covered by the Department.

6. Subsequently, on August 21, 1957, additional investigation was undertaken, at which time defendant restated his contention and refused to allow inspection of his books. The following day defendant mailed a letter to the Department, making specific inquiry in writing as to what jobs were considered to be covered by the Act. The letter was not answered. Thereafter, the books and records were examined again, but only after the Government had filed a petition to compel the defendant to produce and entry of order consented to by defendant, this action being designated in this Court as Miscellaneous Action #1–19–Misc.

7. This action was filed in this Court on April 16, 1958.

8. Following pre-trial conference, certain of the above facts were stipulated and plaintiff amended his complaint by leave of the Court by striking therefrom Paragraphs V, VI, and VII, and testimony was taken on the sole remaining issue as to the propriety of issuance of injunction for violation of overtime provisions of the Act.

9. The defendant sought advice of counsel when this suit was filed, whereupon he immediately sought to comply with the provisions of the Act and evidenced a strong desire to comply with the Act. Immediately, defendant gave instructions that no employee should work in excess of 40 hours per week without his express consent, and, in the event they did, that they were to be paid time and one-half overtime in accordance with the Act. (Transcript Page 60.)

10. The defendant admitted at the trial that the said seven contracts above referred to were in interstate commerce and were therefore within the purview of the Fair Labor Standards Act and that he was in violation thereof.

11. There is no indication that full payment of wages due employees as a result of these violations are not satisfied.

12. The evidence did not establish any intentional violation of the Act and there is no reasonable likelihood defendant will violate the Act in the future. The defendant assures full compliance.

13. A far greater percentage of jobs conducted by defendant were admittedly not covered by the provisions of the Fair Labor Standards Act either from number of job basis, number of employees, or monetary expenditure consideration.

14. After several investigations and conferences at the office of defendant, indication of resentment and clash between defendant and Department Investigator became apparent. (Transcript Pages 70–71.)

### Conclusions of Law

1. Court has jurisdiction of the parties hereto and of the subject matter of this cause.

2. Defendant's employees, engaged in performing construction work on the jobs referred to in Findings of Fact Number 3, were engaged in commerce or in the production of goods for commerce within the meaning of the Act.

3. That the defendant's violations were not intentional, and that there is no reasonable likelihood that defendant will violate the Act in the future.

4. The Court concludes that no injunction is required to insure future compliance on the part of the defendant with the provisions of the Fair Labor Standards Act. To determine otherwise on this record would be to say any violation whatever of any provision of the Act being admitted by the defendant automatically subjects him to the immediate force of injunctive restraint, even though full compliance of the Act can well be expected without such remedy.

5. A review of the transcript of the testimony in this case discloses a marked resemblance with the situation as reported in Mitchell v. Bland, 5 Cir., 1957, 241 F.2d 808, as found by the trial judge there. Defendant here also resented the authority of the Government over his business, and unfortunate statements were made. The Court is aware that more is involved in a matter of this nature than the settlement of a private controversy without appreciable consequences to the public. Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of public interest than they are accustomed to go when only private interests are involved, as expressed by the Supreme Court in Virginian Railway Co. v. System Federation No. 40, Railway Employees, 1937, 300 U.S. 515, at page 552, 57 S.Ct. 592, at page 601, 81 L.Ed. 789. But as the Supreme Court has also said in approving the withholding of the force of an injunction:

"We are dealing here with the requirements of equity practice with a background of several hundred years of history. * * * The historic injunctive process was designed to

deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. * * *" Hecht Co. v. Bowles, 321 U.S. 321, at page 329, 64 S.Ct. 587, at page 591, 88 L.Ed. 754.

Also, as was stated in Mitchell v. Bland, supra, 241 F.2d at page 810:

"The nature of injunctive relief is that it is prospective, prophylactic, preventive,—not punitive. By bringing about a better attitude on appellant's part towards the Act, and his plighted purpose to obey it scrupulously and ungrudgingly, the Court below was using its equity powers in consonance with their best traditions."

See also Mitchell v. Chambers, 10 Cir., 214 F.2d 515; United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303. As Judge Murrah so ably put it in Mitchell v. Chambers, supra [214 F.2d 517]:

"The purpose of an injunction in a case of this kind is to prevent future violations in the public interest, not to punish for past transgressions. Equity will not do a useless or vain thing, and in the absence of some likelihood or probability that the violations will recur, the court is fully justified in refraining from entering an empty decree."

It is, therefore, Ordered, Adjudged, and Decreed that no injunction be entered herein, provided that in the event future violations of the provisions of this Act by this defendant are found by the plaintiff, plaintiff may move to reopen this proceeding and have prompt hearing before the Court and seek whatever relief may be appropriate.