290 F.2d 24
 James P. MITCHELL, Secretary of Labor, United States Department of Labor, (Arthur J. Goldberg, Secretary of Labor, substituted as party appellant in the place and stead of James P. Mitchell, resigned), Appellant,
v.
JAX BEER DISTRIBUTORS OF BEAUMONT, INC., et al., Appellees.
 No. 18227.
 United States Court of Appeals Fifth Circuit.
 May 2, 1961.
 Rehearing Denied May 31, 1961.
 
 Sylvia S. Ellison, Atty., U. S. Dept. of Labor, Washington, D. C., Earl Street, Reg. Atty., U. S. Dept. of Labor, Dallas, Tex., Bessie Margolin, Asst. Sol., of Labor, Harold C. Nystrom, Acting Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., for appellant.
 James D. McNicholas, Keith, Mehaffy, McNicholas & Weber, Beaumont, Tex., for appellees.
 Before RIVES, CAMERON and JONES, Circuit Judges.
 JONES, Circuit Judge.
 
 
 1
 The appellant, the Secretary of Labor, brought a suit under Section 17 of the Fair Labor Standards Act,[1] to enjoin violations of the minimum wage and record keeping provisions of the Act. The district court held that the Act had been violated but that the violations "were neither deliberate nor intentional," and injunctive relief was denied. Seeking a reversal of that decision, the Secretary has appealed.
 
 
 2
 The appellee, Jax Beer Distributors of Beaumont, Inc., herein called Jax, is a distributor in Beaumont, Texas, of beer which it purchases from a brewery located in New Orleans, Louisiana. It employed truck driver salesmen, also appellees here, who made sales and deliveries of beer to Jax's customers on regular routes. Helpers were employed on these trucks to assist the drivers. The helpers were paid less than forty dollars a week. If they were within the coverage of the wage and hour provisions of the Act, it was being violated. The helpers were hired and fired by the drivers and the drivers directed their work and fixed the hours they were to work. The driver salesmen were compensated by commissions on sales and the helpers were paid by them. The driver salesmen were members of a union and their employment relationship was the subject of an agreement bargained for them by the union. Early in 1958 Jax was informed by Wage and Hour investigators that the helpers were its employees and were covered by the Act and were entitled to be paid the minimum hourly wage as fixed by the Act.
 
 
 3
 Jax's driver salesmen advised Jax that they regarded the helpers as their employees. Jax brought a suit for a declaratory judgment against the Secretary of Labor, praying for a determination of whether the helpers were its employees. The Secretary filed a motion to dismiss this suit on the ground that there was no jurisdiction. The court granted the motion. This action was commenced. Jax moved for a more definite statement and the motion was denied. Jax answered and the case was tried. The court found that the helpers were employees of Jax, that they were in interstate commerce, and that the wage provisions of the Act had been violated. The court found that the failure of Jax to comply was neither deliberate nor intentional. The declared desire of Jax to comply if the helpers were its employees was recited in the court's findings. An injunction was denied. The Secretary has appealed, asserting error in denying injunctive relief.
 
 
 4
 The responsibility for determining whether an injunction shall issue in a wage and hour case where a violation has been established rests initially and primarily upon the district court and a strong showing of abuse of discretion must be made to reverse the trial court. Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243; United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303; Mitchell v. Strickland Transportation Co., Inc., 5 Cir., 1959, 267 F.2d 821; Mitchell v. Empire Gas Engineering Co., 5 Cir., 1958, 256 F.2d 781; Mitchell v. Bland, 5 Cir., 1957, 241 F.2d 808; Mitchell v. Hodges Contracting Co., 5 Cir., 238 F.2d 380. It is settled that in a clear case of abuse of discretion it is our duty to hold that a denial of injunctive relief is error. Goldberg v. Thompson, 5 Cir., 1961, 287 F.2d 421; Mitchell v. Blanchard, 5 Cir., 1959, 272 F.2d 574; Mitchell v. Hausman, 5 Cir., 1958, 261 F.2d 778; Mitchell v. Raines, 5 Cir., 1956, 238 F.2d 186; Lenroot v. Kemp, 5 Cir., 1946, 153 F.2d 153.
 
 
 5
 This Court, in the Hodges Contracting Co. case set forth some of the criteria to be considered by the district court in determining whether an injunction should issue, and these were quoted in the Hausman opinion where the district court's conclusion that no injunction was necessary was reversed as an abuse of discretion. In the Hausman case it was held that the question of coverage had been clearly established by a decision of this Court[2] and that continued non-compliance thereafter with protestations that there was no coverage was not in good faith. On such facts it was held, in Hausman, that the district judge was not justified in accepting assurances of future compliance and the district court was directed to issue an injunction.
 
 
 6
 We think the case before us is a stronger one than Hausman for holding that there was an abuse of discretion. This Court had previously held in Stewart-Jordan Distributing Co. v. Tobin, 5 Cir., 1954, 210 F.2d 427, certiorari denied Stewart-Jordan Dist. Co. v. Mitchell, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136, that the helpers of drivers of beer delivery trucks, although controlled and paid by the drivers, were nevertheless employees of the distributor and, interstate commerce being shown, were entitled to the benefits and protection of the wage and hour provisions of the federal statute. In Hausman there was a contention made of a belief that the particular employment was not covered by the Act, although it was decided that the belief was not held in good faith. Here, the coverage was not seriously contested. Jax sought to excuse non-compliance on the ground that the drivers were asserting that the helpers were their employees and not those of Jax. At the beginning of the trial counsel for the Secretary stated his position and outlined the matters he expected to prove. Counsel for Jax then stated:
 
 
 7
 "Your Honor, we don't believe it is necessary for the Government to prove all of these things. We admit the employment, and the Fifth Circuit has held under facts identical to this that there is employment. There is no question about that.
 
 
 8
 "As a brief preview, however, to this particular item, the Wage and Hour Department investigated all of our position approximately two years ago and at that time came to us and asked us to pay truckdriver-salesmen helpers back wages. At that time our truckdriver-salesmen contended with us — told us that as far as they were concerned these boys were working for them and were their employees, and so we were on one hand confronted with the Government's contention that they were our employees, and on the other hand we were confronted with our truckdriver-salesmen that these truckdriver helpers were their employees."
 
 
 9
 Jax thus, by admitting employment, admitted noncompliance since interstate commerce and sub-standard wages were not in issue. The district court was justified in finding that "The defendant repeatedly has violated Section 6, 11(c), and 15 of the Fair Labor Standards Act from February 1, 1956, until the time this case came on for trial." The trial took place on December 15, 1959. A further finding that the violations were knowingly and deliberately committed could have been made.
 
 
 10
 As was held in Mitchell v. Hausman, supra, so it must be held here that the district court exceeded the limits of its broad discretion in denying the injunctive relief sought by the Secretary. The judgment of the district court is reversed and the cause is remanded with directions to grant an injunction.
 
 
 11
 Reversed and remanded.
 
 
 
 Notes:
 
 
 [1]
 "The district courts, together with the * * * District Court for the District of the Canal Zone, the District Court of the Virgin Islands and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 215 of this title: Provided, That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action." 29 U.S.C.A. § 217
 
 
 [2]
 Tilbury v. Mitchell, 5 Cir., 1955, 220 F.2d 757, certiorari denied Tilbury v. Rogers, 350 U.S. 839, 76 S.Ct. 77, 100 L.Ed. 748
 
 
 
 12
 CAMERON, Circuit Judge (dissenting).
 
 
 13
 The majority opinion in this case furnishes, in my judgment, another instance where an appellate court is substituting its discretion for that which, under the law, belongs to the district judge. The law in such matters was, I think, correctly stated in Mitchell, Secretary, etc. v. Bland, etc., 5 Cir., 1957, 241 F.2d 808, 810-811:
 
 
 14
 "The nature of injunctive relief is that it is prospective, prophylactic, preventive, — not punitive. By bringing about a better attitude on appellant's part towards the Act * * * the Court below was using its equity powers in consonance with their best traditions.
 
 
 15
 "The problem before the Court below did not involve litigation between two private individuals only; it related primarily to the business of the public, and the public interest was entitled to primary consideration.[6] A labor controversy was presented to the Supreme Court in Virginian Railway Co. v. System Federation No. 40, Railway Employees, 1937, 300 U.S. 515, at page 552, 57 S.Ct. 592, at page 601, 81 L.Ed. 789, when it gave expression to this principle: `More is involved than the settlement of a private controversy without appreciable consequences to the public * * * Courts of equity may, and frequently do, go much farther both to give and withhold relief in furtherance of the public interest than they are accustomed to go when only private interests are involved * * *'
 
 
 16
 "The same ideas were expressed by the Supreme Court[7] in dealing with the enforcement of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq., in a case where the problem presented was quite similar to that before the Court in this case. Hecht involved a prayer for injunctive relief where a spot check of seven out of more than one hundred departments of a large store revealed four thousand five hundred violations of the law. After a full hearing, the District Judge[8] denied injunction pursuant to its general equity powers: `In a case such as this an injunction should not issue unless thereby better compliance with law may be enforced * * * and in my judgment an injunction would not be in the public interest * * *' The Court of Appeals for the District of Columbia[9] reversed on the theory that the District Judge had given too wide a sweep to traditional equity powers. The Supreme Court granted certiorari[10] and reversed the action of the Court of Appeals approving what the District Court had done and using this language:
 
 
 17
 "`We are dealing here with the requirements of equity practice with a background of several hundred years of history. * * * The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. * * *' 321 U.S. at page 329, 64 S.Ct. at page 591.
 
 
 18
 "`For the standards of the public interest not the requirements of private litigation measure the propriety and need for injunctive relief in these cases.' 321 U.S. at page 331, 64 S.Ct. at page 592.
 
 
 19
 "The District Judge, having the long-term responsibility for the enforcement of this law and others like it in a large district in Texas, and being acquainted with local conditions and having observed appellant and the government agents as the contest before him unfolded, was in better position than we are to assess and solve this problem. We are not willing to set aside the discretion employed by him in fashioning his decree to serve the interest of the litigant and the public."
 
 
 20
 I think that is a sound statement of the law and of public policy involved in the issuance or refusal of any injunction. I think it applies to the facts of the case before us, and that we ought not, from our "ivory tower" far removed from the point where the human drama is enacted, to conclude that our judgment is better than that of the district judge, exercising a discretion which resides in him. I, therefore, respectfully dissent.
 
 
 
 Notes:
 
 
 [6]
 `The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction. * * *' Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 500, 61 S.Ct. 643, 645, 85 L.Ed. 971
 
 
 [7]
 Hecht Co. v. Bowles, 1944, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754
 
 
 [8]
 Brown v. Hecht Co., D.C., 49 F.Supp. 528, 532
 
 
 [9]
 Brown v. Hecht Co., 1943, 78 U.S.App. D.C. 98, 137 F.2d 689
 
 
 [10]
 320 U.S. 727, 64 S.Ct. 81, 88 L.Ed. 429."