346 F.2d 340
 BENEFICIAL FINANCE CO. OF WISCONSIN, a corporation,
Beneficial Management Corporation of America, a
corporation and Edwin F. Koetsch, an
individual, Defendants-Appellants,
v.
W. Willard WIRTZ, Secretary of Labor, United States
Department of Labor, Plaintiff-Appellee.
 No. 14856.
 United States Court of Appeals Seventh Circuit.
 May 25, 1965.
 
 Herbert P. Wiedemann, Milwaukee, Wis., for appellant.
 Charles Donahue, Sol., Bessie Margolin, Assoc. Sol., Robert E. Nagle, and Isabelle R. Cappello, Attys., U.S. Dept. of Labor, Washington, D.C., and Herman Grant, Reg. Atty., U.S. Dept. of Labor, Chicago, Ill., for appellee.
 Before KNOCH, SWYGERT and MAJOR, Circuit Judges.
 MAJOR, Circuit Judge.
 
 
 1
 Plaintiff brought this action to enjoin defendants from violating certain provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. 201-219. The District Court, after hearing, made its findings of fact, about which there is little if any dispute, its conclusions of law and on June 25, 1964, entered judgment from which the appeal comes to this Court. The District Court concluded that defendants had violated Sec. 15(a)(2) (wages and hours) and Sec. 15(a)(5) (record-keeping requirements) of the Act, embodied such conclusions in its judgment and permanently enjoined and restrained defendants from future violations.
 
 
 2
 The contested issues are aptly stated in plaintiff's brief. They are (1) whether employees in the branch office of a nationwide small loan organization who are continuously engaged in such activities as the collection of funds and preparation of reports, documents and correspondence for out-of-state transmission, all of which are vital to the organization's nationwide operations, are engaged 'in commerce' and in the 'production of goods for commerce' within the meaning of the Fair Labor Standards Act, and (2) whether it was an abuse of discretion for the District Court to grant injunctive relief, and to include within its scope all of the organization's branch office employees.
 
 
 3
 Beneficial Finance Company is a holding company with headquarters at Wilmington, Delaware. Its holdings consist of subsidiary corporations which are engaged, throughout the United States and in certain foreign countries, in the business of making installment loans. At the close of 1957, these subsidiaries operated a total of 1,089 small loan offices.
 
 
 4
 Defendant Beneficial Management Corporation of America (hereafter called Beneficial Management) is a subsidiary of Beneficial Finance Company, with offices located at Morristown, New Jersey. Defendant Beneficial Finance Company of Wisconsin is one of the operating subsidiary corporations and maintains a number of loan offices in that State. At all times material to this action it operated a loan office at 152 West Wisconsin Avenue, Milwaukee, Wisconsin (hereafter called 152 Wisconsin-Beneficial). This is the only office at which violations of the Act were alleged in the complaint and the only office discussed in the evidence.
 
 
 5
 Defendant Edwin F. Koetsch was the manager at 152 Wisconsin-Beneficial. During the course of the proceeding it was stipulated that he was an office manager and exempt as an executive and administrative employee under Sec. 13(a) (1) of the Act. The action was dismissed as to him.
 
 
 6
 The defendant corporations are components of the widely advertised 'Beneficial Loan System,' one of the nation's two largest chain organizations engaged in the making of installment loans, insuring borrowers and performing attendant collection and credit investigation activities. The System makes annually over 1,783,000 loans, totaling more than $630,000,000, and as of the close of 1957 employed 6,200 persons.
 
 
 7
 Beneficial Management of New Jersey provides management services for the System, including audit and personnel supervision, setting up policy, controlling of office supplies and maintenance of statistics. Through its branch loan offices, the Beneficial System offers its customers nationwide and foreign services, including a 'Beneficial Cash-Credit Account' evidenced by a Nationwide Cash Credit Card which enables a borrower to 'get cash in a hurry at home or wherever you may be,' once a borrower has a loan approved by one of the System's offices. Through these offices, the Beneficial System also offers its customers the convenience of accommodation payments, whereby they 'may make a payment at any office from coast to coast,' as well as the opportunity to buy insurance written by an out-of-state insurance company at the time a loan is made by the local office personnel.
 
 
 8
 From the supervisory offices to the loan offices there flows a constant stream of communications, documents and materials. These include training courses required of all personnel; office supplies, advertising matter and forms; service staff bulletins containing instructions and uniform procedures to be followed which must be read and initialed by all employees and then bound and used as a constant source of information, and ledgers which reflect information received from loan office reports, with notation of errors to be corrected and charges made against the account of the loan office.
 
 
 9
 Regular transmission and communication between the various loan offices also occurs because of the services they are required to perform for one another by honoring the Nationwide Cash Credit Cards, transferring accounts of customers who move, tracing delinquent customers referred by other Beneficial offices and other finance companies, and accepting accommodation payments. There is also regular interstate transmission and communication between the loan offices and various companies performing business services for all the affiliated loan offices of the Beneficial System, including the regional depository banks, companies carrying life insurance on Beneficial borrowers and the System's advertising representative.
 
 
 10
 The magnitude of the operation is evidenced by the fact that prior to December 31, 1956, it had loaned $462,492,129, of which amount approximately $305,540,000 was capital borrowed in large cities in the United States and Canada. Funds needed for loans and operations are funneled to the affiliated loan offices through regional depositories, each of which services offices in a number of states. Each loan office not only obtains funds from such depository but transfers funds back to it whenever its own local banking account exceeds of fixed amount.
 
 
 11
 We need not dwell further on the facts bearing on the diversified activities of the far-flung operation of the System because it is not open to doubt but that it was engaged in interstate commerce and in the production of goods for commerce. This includes its engagement with 152 Wisconsin-Beneficial, about which the dispute centers.
 
 
 12
 Even so, defendants contend here, as they did in the District Court, that the employees at its Wisconsin office are not engaged in commerce or in the production of goods for commerce and, therefore, are not covered by the Act. Defendants, in reliance upon their belief of non-coverage, admit that they have not at any time complied with the provisions of the Act which they are now alleged to have violated.
 
 
 13
 No good purpose could be served in relating in detail the duties of the employees and the work performed by them, as found by the Court. These findings, which in the main are not challenged, cover some fifteen pages of the Appendix. We think it is sufficient to note that their work required them to do any and all things essential to the operation of the Wisconsin office, including its interstate business. They prepared papers such as checks, contracts for insurance and reports for use in the operation of the business, which were transmitted to the managing office as well as to other offices included in the System. They followed instructions received by the local office from the supervisory office in New Jersey and made out requisition forms for supplies which were furnished by the New Jersey office.
 
 
 14
 Defendants' contention of non-coverage is based upon Mitchell v. Household Finance Corp. et al., 208 F.2d 667 (3rd Cir.), a case in which the facts, as the District Court observed, are practically 'on all fours' with the case at bar. It is argued that this case has never been disapproved, and we are urged to follow it. Like the District Court, we are not persuaded that we should do so.
 
 
 15
 In Aetna Finance Co. v. Mitchell, 247 F.2d 190 (1st Cir.), the Court affirmed a holding of the District Court (144 F.Supp. 528) that employees of a small loan company were covered. True, the Court distinguished the facts from those before the Court in Household, but as to that case stated, 'Furthermore, we are not at all sure that it would be followed by the Third Circuit today, in view of the enlightenment to be derived from later dicisions of the Supreme Court, particularly Mitchell v. C. W. Vollmer & Co., Inc., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 99 L.Ed. 1196.'
 
 
 16
 The guiding principles announced in Vollmer have been often utilized and given effect by the Courts. In that case, the Court (page 429, 75 S.Ct. page 862) stated, 'The test is whether the work is so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated, local activity.'
 
 
 17
 Defendants profess to discern from Mitchell v. H. B. Zachry Co., 362 U.S. 310, 80 S.Ct. 739, 4 L.Ed.2d 753, a retraction by the Supreme Court, or at any rate a limitation, upon its rationale in Vollmer. They chide the Secretary for not mentioning or discussing Zachry in his brief. A study of Zachry leads us to the conclusion that there is not merit in defendants' contention. True, the Court points out that Congress in enacting the Fair Labor Standards Act did not exercise its full power, emphasizes that the line between coverage and non-coverage is often difficult to ascertain and that a solution of the question is dependent upon the facts of the case.
 
 
 18
 In Vollmer, the employees were engaged in the construction of an earthwork embankment and concrete platform for a lock, a unit of an interstate waterway. The Court reasoned that such employees were engaged in the work of improving existing facilities of interstate commerce and fell in the same category as those engaged in the repair of facilities for such commerce, an activity held to be 'in commerce' in J. F. Fitzgerald Construction Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892, 89 L.Ed. 1316. In Zachry, the employees were engaged in the construction of a dam which it was expected, when completed, would increase the impounding facilities of a local reservoir which furnished water to customers, many of whom were engaged in producing goods for interstate commerce. The Court (362 U.S. page 319, 80 S.Ct. page 745) distinguished Vollmer thus, 'As we held in Vollmer, that an activity is rightly called construction and is wherefore distinct from operation, does not per se remove it from coverage. Construction may be sufficiently 'closely related' to production to place it in that proximity to 'commerce' which the Act demands as a predicate to coverage. Here, however, neither a facility of 'commerce' nor a facility of 'production' is under construction. Operation of the completed dam will merely support production facilities; and construction of the dam is yet another step more remote.' Thus, the Court found that the work of the employees involved was too remote from either a facility of commerce or production to be classified as engaged in commerce. It did so without in any way detracting from what it had reasoned and held in Vollmer.
 
 
 19
 A case much in point which is fatal to defendants' contention that its employees were not covered by the Act is Durkin v. Joyce Agency, Inc., 110 F.Supp. 918, in which Judge Perry of the Northern District of Illinois held that employees in numerous categories-- including watchmen, guards, detective and others, employees of an outside agency who performed services at a warehouse of a large mercantile establishment engaged in interstate commerce-- were covered by the Fair Labor Standards Act. Also among the employees involved were a bookkeeper, a statement clerk and a switchboard operator. This Court in part reversed, holding that warehouse employees of an outside agency engaged only for duties of a protective nature, as well as employees who merely communicate with other employees although in different states, were not engaged in commerce or in the production of goods for commerce. Mitchell v. Joyce Agency, 211 F.2d 241. The Supreme Court in a Per Curiam opinion reversed the judgment of this Court and in all respects affirmed that of the District Court. 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740. The opinion of the District Court in Joyce, approved by the Supreme Court, fully answers defendants' argument in the instant case on the coverage issue.
 
 
 20
 In view of the fact that the Supreme Court has spoken so plainly and much to the point, we see nothing to be gained by a discussion of numerous other cases discussed by the parties. As noted, there is no question but that Beneficial Finance Company and its subsidiaries, including 152 Wisconsin-Beneficial, were engaged in interstate commerce. Obviously, 152 Wisconsin-Beneficial (as well as other subsidiaries) was a participant in such engagement because of the services rendered by its employees. Its activities cannot be isolated on the premise that it is a local activity because (applying the Vollmer test) its work is so directly and vitally related to the functioning of an instrumentality of interstate commerce as to be for all practical purposes a part of it.
 
 
 21
 We conclude that the District Court correctly decided that defendants' employees were covered by the Act in the manner alleged.
 
 
 22
 This brings us to defendants' contentions (1) that even though its employees are covered, the case is not an appropriate one for injunctive relief, and (2) that in any event the injunction is too broad in its scope.
 
 
 23
 This injunction order, so far as pertinent, provides, 'That defendants, their officers, servants, employees and all persons acting or claiming to act in their behalf and interest be and they are hereby permanently enjoined and restrained from violating the provisions of Sec. 15(a)(2) and Sec. 15(a)(5) of the Fair Labor Standards Act of 1938 as amended in any of the following manners' (then follow the 40-hour week and the recordkeeping provisions as prescribed by regulations). Relative to the propriety of an injunction, the District Court stated, 'In view of the extended period of non-compliance, and especially the Finding of Fact, No. 40, the court believes that injunctive relief is appropriate.'
 
 
 24
 Finding No. 40 states, 'The employees of 152 Wisconsin-Beneficial's office were not allowed to show more than forty hours on their time records even when they worked in excess of forty hours in a workweek on instructions of the defendant Edwin F. Koetsch and the field supervisor of Management-Beneficial.'
 
 
 25
 The falsification of the time records was not disputed, but it was claimed to have been done so as to make the work of the local manager and supervisor 'look as good as possible' to the home offices of Beneficial, which had a 'company policy' that the workweek of the branch offices be kept to a forty-hour limit, a limit which was regularly exceeded in order to meet the demands of the branch office operations.
 
 
 26
 Thus, the Court was confronted with a situation wherein the defendants were vigorously contesting the application of the Act, with no indication, much less assurance, that they would in the future comply. It is well settled that a court has a wide discretion as to whether an injunction shall issue and that the exercise of its discretion is not subject to review except upon a showing of clear abuse. No such showing has been made here. Mitchell v. Lublin, McGaughy and 79 S.Ct. 260, 3 L.Ed.2d 243, Mitchell v. Bland, 5 Cir., 241 F.2d 808, 810; Walling v. Panther Creek Mines, Inc.,148 F.2d 604, 605 (7th Cir.).
 
 
 27
 Neither are we convinced that the Court abused its discretion as to the scope of the injunction. It is to be noted that the injunction is directed at the two defendants, Beneficial Finance Company of Wisconsin and Beneficial Management Corporation of America, and to their 'officers, servants, employees and all persons acting or claiming to act in their behalf and interest.' Certainly it was properly directed at the first named defendant, which operated a number of loan offices in the State of Wisconsin, including 152 Wisconsin-Beneficial.
 
 
 28
 It was stipulated that the persons employed at 152 Wisconsin-Beneficial were employees of Beneficial Management Corporation. It was found that the latter was a wholly owned subsidiary of Beneficial Finance Company; that as such 'it supervises and audits 152 Wisconsin-Beneficial and other branch loan offices which are subsidiaries of Beneficial,' and that the falsification of the records at 152 Wisconsin-Beneficial was done on instructions of its field supervisor. It was further found that all small loan offices were subsidiaries of Beneficial. While there is no specific finding that the persons at the other loan offices were employees of Beneficial Management and performed services similar to those at 152 Wisconsin-Beneficial, such a conclusion is inescapable from the record. This conclusion is fortified by an admission of defendants' counsel, made in oral argument in the trial court, that the case on trial was a 'test case' for all its other offices.
 
 
 29
 Defendants cite two cases in support of their contention that the scope of the injunction was too broad. Lenroot v. Interstate Bakeries Corp., 8 Cir., 146 F.2d 325, and Communications Workers of America v. N.L.R.B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896. In Lenroot, the Court of Appeals held that the District Court did not abuse its discretion in its refusal to grant the broad injunction requested, in other words that the issuance or refusal of the broad injunction was a discretionary matter. In the Communications Workers case, it is true that the Supreme Court held the injunction too broad and directed its modification. It appears from the opinion, however, that the injunction as modified was as broad as that in the instant case.
 
 
 30
 We think it not necessary to further discuss this feature of the case. The judgment of the District Court is
 
 
 31
 Affirmed.