James P. MITCHELL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

The KROGER COMPANY, a corporation, Defendant.

No. 9651.

United States District Court
W. D. Missouri, W. D.
March 29, 1957.

Harper Barnes, Regional Atty., Dept. of Labor, William C. Cull and Rex L. Culley, Kansas City, Mo., for plaintiff.

Richard Runyan, Cincinnati, Ohio, Roscoe C. Van Valkenburgh, of Brenner, Van Valkenburgh & Wimmell, James E. Lockwood, Associate, Kansas City, Mo., for defendant.

R. JASPER SMITH, District Judge.

This is an action instituted by James P. Mitchell, Secretary of Labor, against the defendant Kroger Company, Inc., seeking to enjoin defendant from further violating the provisions of Sections 7, 15(a) (2), 11(c) and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq., referred to hereafter as the Act. The complaint alleges that defendant has violated and is violating the provisions of Section 7 and 15(a) (2) of the Act by employing its retail store auditors in interstate commerce, as defined in the Act, for work weeks longer than forty hours without compensating them for their employment in excess of forty hours at a rate not less than one and one-half times the regular rates at which they were employed.

Defendant's answer denies that any of its retail store auditors were or are engaged in interstate commerce or in the production of goods for interstate com-

merce within the meaning of the Act. Furthermore, the answer asserts that these employees are exempt from coverage of the Act as amended, under the provisions of Sections 13(a) (1) and 13(a) (2), 29 U.S.C.A. §§ 213(a) (1) and 213 (a) (2).

By stipulation the parties agree to material facts about defendant's organization and operation. Defendant is an Ohio corporation doing business in the State of Missouri. It operates a warehouse in North Kansas City, Missouri, which serves as a merchandise distribution point for thirty-six retail stores in Missouri and twelve retail stores in Kansas. The branch office at the same address supervises the operations of both the warehouse and retail stores. For some years defendant has had in its employ, within the territory of the branch office, certain retail store auditors. At the present time, two auditors are employed. From time to time, the auditors have worked in excess of forty hours in a work week. Prior to May 24, 1954, they were paid by the hour. Commencing on May 24, 1954, and continuing to the present time, defendant paid the auditors a straight weekly salary regardless of the number of hours worked each week.

The parties also stipulate that neither the branch office nor the warehouse is exempt as a retail establishment within the meaning of the Act. However, it is agreed that defendant's retail stores in Missouri and Kansas are retail establishments as defined by the Act.

In addition to the stipulation, the trial briefs submitted by the parties reveal other factual details. The Kroger Company is a grocery store chain, engaged in the production, purchase, distribution and ultimate retail sale of food products. Most of the merchandise sold in the retail stores is shipped from the branch warehouse upon order of the manager of the retail store. A small amount of merchandise is purchased locally by individual store managers. The store manager has authority to operate and

supervise his retail store, subject to direction from branch office personnel.

It is the responsibility of the retail store auditors to audit each of the retail stores within the territory of the branch office once every thirteen weeks or four times a year. One admitted purpose of these audits is to afford the store manager a periodic check on his reconciliation of inventory, sales and cash.

Presently, defendant's two store auditors are residents of Missouri. When auditing stores located in Kansas, they leave their homes in Missouri in the morning and return the same night, except in the case of three retail stores in Iola, Garnett and Topeka. When auditing these stores, they remain away from home overnight, returning the next day. On their trips to the various stores, the auditors carry no goods or supplies except their work sheets.

After a count of the merchandise and a reconciliation of the current week's cash, an audit report form is mailed to the branch office. This report usually is mailed from the town where the retail store is situated. Occasionally, the report is held and mailed from the post office near the auditor's home. Since the auditors infrequently go to the branch office, this system is used, which utilizes the mails rather than personal delivery of the report. The audit reports are reviewed by branch office accounting personnel, and information from them is reviewed by branch office management and district managers. The audit report furnishes information which is used by the branch office accountants in preparing profit and loss statements to the Home Office in Cincinnati, Ohio.

The chief store auditor supervises the work of the store auditor and in turn is responsible to the branch accountant who works at the branch office. The chief store auditor determines what stores are to be audited and at what times, and prepares the audit schedule. All the work of the store auditors is done in the retail store. They do not have offices or work space at the branch office and only go to

the branch office when called in on rare occasions because of personnel changes or changes in auditing policy. Similarly, retail store managers and store clerks are called into the branch office for consultation, though likewise infrequently.

None of the store auditors perform any work in the warehouse, nor do they have anything to do with the ordering or shipping of merchandise from the warehouse to the stores.

The store manager's permission must be obtained before the store auditor makes an audit; and the store manager's signature is required on the audit report to indicate his approval, or the reason must be given for his refusal to sign.

In addition to the audit report, the store auditors make a spot check of weight labels to determine their accuracy. Also equipment inventories are made once a year for each store. The results of this inventory are utilized by both the store manager and the branch office.

Defendant reimburses its auditors for their automobile mileage and traveling expenses in going from their homes in Kansas City, Missouri, to the retail stores, and from the stores to home on return.

Since it is stipulated that the auditors have exceeded forty hours in work weeks when auditing Kansas stores and have not received any overtime compensation, it is clear that if the store auditors are within the coverage of the Act, Sections 7 and 15(a) (2) have been violated. The problem is strictly one of ascertaining Congressional intent.

■ The scope of the Fair Labor Standards Act is not coextensive with the maximum limits Congress may exercise over commerce. "The history of the legislation leaves no doubt that Congress chose not to enter areas which it might have occupied." A. B. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638. "Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority." McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1249, 87 L.Ed. 1538. It "did not choose to exert its power to the full by regulating industries and occupations which affect interstate commerce." Overstreet v. North Shore Corporation, 318 U.S. 125, 63 S.Ct. 494, 496, 87 L.Ed. 656.

Plantiff here seeks to bring defendant's retail store auditors within the terms of Section 7 of the Act, 29 U.S.C.A., § 207, relating to employees "engaged in commerce or in the production of goods for commerce." A satisfactory test, inflexible and applicable to every situation, by which to determine whether employees are "engaged in commerce or in the production of goods for commerce," is elusive. With no exact formula, the judicial task is to define the precise scope of the Act, and by examining the circumstances of a particular case, to decide whether it is encompassed in that scope.

The theory under which plaintiff seeks coverage of defendant's auditors is that they, as Missouri residents, cross state lines when auditing stores in Kansas; that they utilize the mails for interstate communication; that the very nature of their work constitutes engagement in commerce; and finally, that their preparation of inventory reports constitutes production of goods for commerce.

Defendant contends that the auditors are not engaged in commerce or in production of goods for commerce; and in any event, that the auditors are exempt from coverage of the Act by virtue of Section 13(a) (2), 29 U.S.C.A. § 213(a) (2), providing nonapplicability of the Act to "any employee employed by any retail or service establishment."

■ The facts standing alone that the auditors traverse state lines frequently in proceeding from their home to a particular store, even though reimbursed for their traveling expenses, and even though they travel by direction of superiors, is not sufficient to establish engagement in commerce. They merely commute from home to store and return, transporting only themselves, no third persons or saleable goods. No case is found ruling that this issue alone constitutes engaging in commerce. Under these circumstances I

cannot extend the coverage of the Act to these employees upon a construction of the term, "engaged in commerce," strained to that extent.

■ Furthermore the mailing of inventory reports and other documents relating to the completed audit of a Kansas store from the point where the store is situated to the branch office in Missouri is not engaging in commerce as defined by the Act. The transmittal of these reports and papers prepared by the auditors is purely internal communication, incidental to the local services performed by the auditors and to the business of a local retail store. "Commerce has no application to the internal affairs of [defendant]. Commerce, as defined by the Act, does not include commerce with oneself." Billeaudeau v. Temple Associates, Inc., 5 Cir., 213 F.2d 707, 711; Bozant v. Bank of New York, 2 Cir., 156 F.2d 787; Kelly v. Ford, Bacon & Davis, 3 Cir., 162 F.2d 555; and Mitchell v. Welcome Wagon, Inc., D.C., 139 F.Supp. 674.

These same authorities dispose of plaintiff's further contention that the preparation of the inventory reports constitutes production of goods for commerce. These audit reports have no intrinsic value of their own. They cannot be considered tangible property, and certainly defendant does not sell them as goods.

An important issue is whether or not the store auditors are engaged in commerce by reason of the very nature of their work and activities. The evidence adduced at trial clearly showed that the auditors perform substantially a retail service in the local store, and in many instances are supervised by the store manager. The goods inventoried by the auditors have come to rest and cease to move in interstate channels. The auditors' functions have no direct bearing upon the movement of goods in commerce. These facts are undisputed by the evidence, and I cannot say that the auditors by reason of their duties in preparing inventory reports in retail stores are engaged in commerce.

■ I am convinced that the auditors are not engaged in commerce or in the production of goods for commerce. Even if they are, however, I am persuaded that the exemption withdraws them from the basic coverage of the Act. Section 13 (a) (2), 29 U.S.C.A. § 213(a) (2). Of course the burden is on defendant to demonstrate that its employees are unmistakably within the terms and spirit of the exemption. A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095; Mitchell v. Aetna Finance Company, D.C., 144 F.Supp. 528. I believe defendant has maintained this burden.

■ Prior to 1949, Section 13(a) (2) provided exemption for any "employee engaged in any retail or service establishment." In 1949 Congress enacted a legislative change, substituting the words "employed by" for the words "engaged in." Further amendments were made to Section 13, clearly and definitely broadening and clarifying the existing exemptions.

Prior to 1949, the Administrator held traveling auditors of retail stores exempt under the Act. Since the amendment, in spite of the obvious effort by Congress to expand and liberalize the exemption, he claims them no longer excluded.

■ As I read the amended provisions, and especially the legislative history surrounding them, I discern a clear and unequivocal Congressional program to broaden the existing exemptions, and not to narrow them. See the report of the Managers, U.S.Code Congressional Service, 81st Congress, First Session, 1949, Conference Report, pp. 2251–2275. The tenor of the amendments indicates an intent to relieve the exemptions from the narrow judicial construction they received prior to 1949. Plaintiff's contention does violence to the liberalized attitude of Congress, and subjects the exemption provisions to further restrictions. Auditors were exempt under the prior law; and where their functions remain the same, the broadening amend-

ments should continue to include them. This is consistent with the spirit of the exemption. The term, "employed by" must be construed to harmonize with the function of the employee, even when applied to a multi-unit chain store organization possessing both retail and wholesale characteristics.

For these reasons, judgment will be entered in favor of the defendant and against the plaintiff. It is so ordered.