James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

The KROGER COMPANY, a Corporation, Appellee.

No. 15817.

United States Court of Appeals Eighth Circuit.

Nov. 4, 1957.

Bessie Margolin, Asst. Solicitor, U. S. Dept. of Labor, Washington, D. C. (Stuart Rothman, Solicitor, Harry M. Leet, Atty., and B. Harper Barnes, Regional Atty., U. S. Dept. of Labor, Washington, D. C., were with her on the brief), for appellant.

James E. Lockwood, Kansas City, Mo. and Richard V. Runyan, Cincinnati, Ohio (Roscoe C. Van Valkenburgh and Brenner, Van Valkenburgh & Wimmell, Kansas City, Mo., were with them on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VOGEL, Circuit Judge.

The Secretary of Labor brought this action against the Kroger Company, asking that the latter be enjoined from violating the provisions of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C.A. § 201 et seq. It was charged that the Kroger Company failed to pay overtime to certain store auditors and failed to keep proper records of the hours worked by the auditors. The Kroger Company is an Ohio corporation which operates a large number of retail stores throughout the country. It maintains a warehouse and one of its branch offices at North Kansas City, Missouri. This branch office and warehouse serve as a merchandise distribution point for 36 retail stores located in Missouri and 12 retail stores located in Kansas. The branch office in North Kansas City, Missouri, supervises the operations of both the warehouse and the retail stores. For some years the Kroger Company has had in its employ, within the territory covered by the branch office referred to, certain retail store auditors. These auditors have worked in excess of 40 hours in a work week. They have been paid a straight weekly salary regardless of the number of hours worked each week. If the auditors are covered by the Act, the Kroger Company has been guilty of a violation of the provisions thereof and the injunction should have been granted. The parties stipulate that neither the branch office nor the branch warehouse is exempt as a retail establishment and they further stipulate that the Kroger Company stores, 36 in Missouri and 12 in Kansas, are retail establishments within the meaning of the Act and that more than 50% of the annual sales of each store is made within the state in which the store is located.

The branch office supervises and performs various administrative functions for the 48 stores within its area. In conjunction with the auditing and accounting departments of the branch office, store auditors are employed by the Kroger Company to check and audit the operations of the 48 stores. These auditors perform their work in accordance with directions from the branch office. During the time covered by this action two to six auditors were employed. These auditors regularly visit, inspect and audit the retail stores in accordance with instructions from the branch office. A chief auditor directs the store auditors who work under him. The auditors make the rounds of the stores in accordance with a "cycle" or schedule established by the Kroger Company, which provides for an audit once every 13 weeks. The schedule is submitted to and approved or revised by the branch office. The auditors prepare reports on some five different forms prescribed by the branch or home office. They are a store cash and merchandise verification, a form showing value of items located in the several sections of the store, a weekly expense statement of the auditor's travel expenses, a form listing the results of the spot-

checking of weights done by the auditors, and a store equipment inventory. One admitted purpose of these audits is to afford the local store manager a periodic check on his reconciliation of inventory, sales and cash. The audit reports are mailed by the auditors to the branch office. This mailing is generally from the town where the retail store is situated, although occasionally the reports are mailed from the post office nearest the auditor's home. As stated by the trial court, Mitchell v. Kroger Company, 150 F.Supp. 30, at page 32:

"The audit reports are reviewed by branch office accounting personnel, and information from them is reviewed by branch office management and district managers. The audit report furnishes [store shortage and overage] information which is used by the branch office accountants in preparing profit and loss statements to the Home Office in Cincinnati, Ohio." (Words in brackets supplied.)

The present auditors are residents of Missouri. While auditing stores located in Kansas they leave their homes in Missouri in the morning and return the same night excepting in the case of three stores located in Iola, Garnett and Topeka, Kansas. When auditing those stores they remain away from home overnight. They carry no goods or supplies excepting only their work sheets. They are reimbursed for their automobile and other travel expenses. The trial court concluded that under these circumstances the auditors were not "engaged in commerce or in the production of goods for commerce" within the meaning of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The trial court further concluded that even if the auditors were engaged in commerce or in the production of goods for commerce, they were nevertheless exempt from the Act by reason of 29 U.S.C.A. § 213(a)(2), which exempts persons "employed by" an exempt retail establishment.

We deal first with the question of whether or not the auditors are engaged in commerce within the purview of the Fair Labor Standards Act. Therein commerce is defined: (29 U.S.C.A. 203(b))

" 'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."

The trial court, in its opinion (150 F. Supp. 30), supports its conclusion of no coverage herein by referring to the fact that the Fair Labor Standards Act is not co-extensive with the maximum limits the Congress might exercise over commerce, citing A. B. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 522, 62 S.Ct. 1116, 1119, 86 L.Ed. 1638, "The history of the legislation leaves no doubt that Congress chose not to enter areas which it might have occupied"; McLeod v. Threlkeld, 1943, 319 U.S. 491, 493, 63 S.Ct. 1248, 1249, 87 L.Ed. 1538, "Congress did not intend that the regulation of hours and wages should extend to the furthest reaches of federal authority"; and Overstreet v. North Shore Corporation, 1943, 318 U.S. 125, 128, 63 S.Ct. 494, 496, 87 L.Ed. 656, it " * * * did not choose to exert its power to the full by regulating industries and occupations which affect interstate commerce".

The foregoing statements by the Supreme Court refer, we believe, to *activities affecting commerce* and in no way justify ignoring the plain language of the statutory definition of commerce, supra. We think that is made clear by the Supreme Court in its further statement in Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 128, 63 S.Ct. 494, 496, supra:

"But the policy of Congressional abnegation with respect to occupations affecting commerce is no reason for narrowly circumscribing the phrase 'engaged in commerce'. We said in the Jacksonville Paper Co. case, supra [Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460], 'It is clear that the purpose of the Act was to extend federal control in this field throughout the farthest reaches of the chan-

nels of interstate commerce.' And in determining what constitutes 'commerce' or 'engaged in commerce' we are guided by practical considerations."

While Congress obviously has not extended coverage under the Act to all activities *affecting* commerce, as it might do if it so chose,[1] this does not and, as indicated by the Supreme Court in the Overstreet opinion, should not narrowly circumscribe the meaning of the phrase "engaged in commerce" or detract in any way from the statutory definition as to the meaning of commerce itself. Such definition is not to be given a strained and narrow construction. Transportation, transmission or communication among the several states are literally within the Act's coverage. We find nothing to justify Congressional intent to the contrary. Instead of a strict or limited construction of this Act, the Supreme Court has pointed out in Mitchell v. C. W. Vollmer & Co., 1955, 349 U.S. 427, 429, 75 S.Ct. 860, 862, 99 L.Ed. 1196, that this Act has been " * * * given a liberal construction * * * " and "the question whether an employee is engaged 'in commerce' within the meaning of the present Act is determined by practical considerations, not technical conceptions. See Walling v. Jacksonville Paper Co., 317 U.S. 564, 570, 63 S.Ct. 332, 336, 87 L.Ed. 460; Overstreet v. North Shore Corp., 318 U.S. 125, 128, 130, 63 S.Ct. 494, 496, 497, 87 L.Ed. 656." Mitchell v. Brown, 8 Cir., 1955, 224 F.2d 359, 362, certiorari denied, 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773. The practical considerations which control a determination of coverage of the Act in a particular case are the activities of the subject employees. See Overstreet v. North Shore Corp., 1943, 318 U.S. 125, 132, 63 S.Ct. 494, 498, where it is stated:

"The nature of the employer's business is not determinative, because as we have repeatedly said, the application of the Act depends upon the character of the employees' activities. Kirschbaum Co. v. Walling, supra, p. 524, [62 S.Ct. [1116] at page 1120]; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, [63 S.Ct. 125, 87 L.Ed. 83]; Walling v. Jacksonville Paper Co., supra."

See also Title 29 C.F.R. § 779.3 (Supp. 1957). This court, speaking through Judge Woodrough, in subscribing to the above doctrine in Mitchell v. Brown, 8 Cir., 1955, 224 F.2d 359, 362, certiorari denied, 350 U.S. 875, 76 S.Ct. 119, 100 L.Ed. 773, pointed out:

"The difficulty has been in finding an acceptable standard for ascertaining whether an employee's activities bring him within the coverage of the Act. * * * In the final analysis, of course, each case must stand or fall on its own particular facts."

■■ We must view those facts with "practical considerations", as directed by the Supreme Court, supra. So viewed, we think the activities of the traveling auditors with which we are here concerned are as integral a part of the interstate functions of the Kroger Company as are those of the employees working physically in the auditing and accounting department of the branch office. Granted, that on a local level the audits form the basis for a check by the local store managers, but concededly they serve purposes in the branch office and home office, where they are reviewed by branch office accounting personnel, branch office management and district managers, and where they furnish information which is used by the branch office accountants in preparing profit and loss statements for the home office of the appellee. The auditors' assignments are supervised by the branch office. Periodically the auditors make equipment inventories which

---

1. Cf. The power of the Interstate Commerce Commission to regulate intrastate rates where local rate discrimination against interstate carriers affects interstate rates. 49 U.S.C.A. § 13(4). Railroad Commission of Wisconsin v. Chicago, B. & Q. R. Co., 1922, 257 U.S. 563, 42 S.Ct. 232, 66 L.Ed. 371, 22 A.L.R. 1086.

are utilized by both the store manager and the branch office. There is here something more than local level or retail activity when the auditors travel from store to store and mail their various reports to the branch office, where they are used by the latter as indicated above. The claim of the Kroger Company " * * * that their (the auditors') work concerns itself solely with goods at rest on the shelves at the retail stores awaiting sale to consumers" is lacking in reality. The auditors are the fingers of the branch office hand, transmitting the result of their activities to the branch, where they are ultimately forwarded to the home office. The auditors thus become an essential and integral part of Kroger's interstate activity. Additionally, the auditors are continuously crossing state lines in their work. This is not the situation of an employee living in one state and commuting to his work in another. Here the interstate travel is required by the interstate nature of the employer's business. The auditors' interstate travel is an inherent and indispensable part of their employment, not an incident of their personal residence. No matter where they live they would still have to travel interstate to do their work and would be compelled to transport their reports interstate to the branch office. This is "transportation, transmission (and) communication" between states within the meaning and the literal terms of the statute. The auditors, in transporting themselves and their services across state lines and in mailing their various reports across state lines for use for further interstate communication, were engaged in commerce within the plain terms of the Fair Labor Standards Act. Decisions holding interstate activities which are merely incidental to an intrastate business as not being within the purview of the Act do not control here. The work of the auditors cannot be realistically compared to interstate activities which are merely incident to a local retail business. Here, instead, they are a part and parcel of the Kroger Company's interstate activity. The " * * *

by practical considerations, not by technical conceptions" guide set out by the Supreme Court in Mitchell v. Vollmer, supra, forces the conclusion that the auditors were engaged in "commerce" within the Act. We must conclude that the trial court's view to the contrary was clearly erroneous.

Holding as we do that the auditors were engaged in "commerce" and therefore covered by the Act, it becomes unnecessary to determine whether they were also engaged in the "production of goods for commerce".

The trial court was persuaded that even if the auditors were engaged in commerce or in the production of goods for commerce that they were nevertheless exempt from the Act under the provisions of 29 U.S.C.A. § 213(a)(2), which, insofar as it may be pertinent herein, provides:

> "§ 213. *Exemptions.* (a) *The provisions of Sections 206 and 207* of this title *shall not apply with respect to * * * (2) any employee employed by any retail or service establishment,* more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in a particular industry; * * *." (Emphasis supplied.)

The trial court stated in its opinion, at page 34 of 150 F.Supp.:

> "Prior to 1949, Section 13(a)(2) provided exemption for any 'employee engaged in any retail or service establishment.' In 1949 Congress enacted a legislative change, substituting the words 'employed by' for the words 'engaged in'. Further amendments were made to Section 13, clearly and definitely broadening

and clarifying the existing exemptions."

The trial court discerned " * * * a clear and unequivocal Congressional program to broaden the existing exemptions and not to narrow them" and held the exemption applicable herein. The legislative history indicates that the 1949 amendment of 29 U.S.C.A. § 213(a)(2) was intended to both clarify and broaden the exemption. 2 U.S.Code Congressional Service, 81st Cong., 1st Sess., 1949, pp. 2263–2264, states:

"The amendment (sec. 13(a)(2)), agreed to in conference clarifies the existing exemption by defining the term 'retail or service establishment' and stating the conditions under which the exemptions shall apply. This clarification is needed in order to obviate the sweeping ruling of the Administrator and the courts that no sale of goods or services for business use is retail. See Roland Electrical Co. v. Walling (326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383); McComb v. Diebert (D.C.E.D.Pa.1949, 117 F.Supp. 41); McComb v. Factory Stores (D.C.N.D.Ohio 1948, 81 F. Supp. 403)."

And at page 2267:

"As in the case of the exemption provided by section 13(a)(2) the exemption here applies to any employee employed 'by' rather than 'in' the establishment. Consequently, the following types of employees of an establishment which meets the tests set forth above will also be exempt, even though they may do most of their work outside the establishment: bill collectors, outside repair and service men, outside salesmen, merchandise buyers, consumer survey and promotion workers and delivery men."

But also points out at page 2265:

"Paragraph (2) of section 13(a) of the conference agreement does not exempt large mail-order houses which make most of their sales to out-of-State customers. Nor does it exempt warehouses and central offices of chain-store systems. The employees in such warehouses and central offices are not employed 'by' any single retail or service establishment in the chain but rather by the chain itself."

■ We see no Congressional purpose to generally broaden 29 U.S.C.A. § 213(a)(2); but rather to generally clarify its exemptions and thereby incidentally broaden the application of such exemptions to include persons "employed by" but not working inside a defined "exempt" retail or service establishment. See 2 U.S.Code Congressional Service, supra, at page 2265. Accordingly, the effect of the amendment substituting the words "employed by" for "engaged in" is to clarify the exemptions so that there may be no doubt of its applicability to retail employees "even though they may do most of their work outside the establishment". By the same token, however, the exemption as amended does not include those who happen to be engaged at but not "employed by" an exempt retail establishment, even though perchance they might perform their functions literally inside the exempt establishment.

If the auditors are employed by any exempt retail store, they are excluded from the Act; but if they are employed by the Kroger Company in its capacity as the operator of an interstate chain store system, the exemption relied on is not applicable. See Title 29 C.F.R. § 779.3 (Supp.1957) wherein it is stated:

"It should be noted that the test prescribed in sections 6 and 7 is related to the nature of the employment of the particular employee. The criterion used in section 13(a)(2), (3), and (4), on the other hand, is the character of the establishment by which the employee is employed. Thus under sections 6 and 7 some employees of a given employer may be covered and others may not be covered. If, however, the exemption contained in section 13(a)(2), or (3), or (4), is applicable to an establishment all the employees who,

within the meaning of these exemptions, are 'employed by' that establishment are exempted from sections 6 and 7."

The Kroger Company attempted to establish that the subject auditors were "employed by" retail establishments. All employees are, of course, employed by the Kroger Company, which operates both in interstate as well as intrastate commerce. Concededly, its stores are retail establishments and therefore exempt so that the employees of such exempt retail stores are exempt from coverage under the Act. Can it be said here that the auditors are employed by each of the retail stores? We think not. They are under the direction and control of the branch office, from which they receive their orders and to which they make their various reports. Applying the "practical considerations" test, we think it must be conceded that they are not employed by the retail stores any more than the employees of warehouses and central offices of chain-store systems, as referred to in the legislative history, supra, who are " * * * not employed 'by' any single retail or service establishment in the chain but rather by the chain itself". At every point the auditors are under the jurisdiction of the branch office throughout their entire operations with the exception of minor incidents where at the request of a local store manager, who could not prevent the audit, delay in or advancement of the time of making such audit would be granted to suit local conditions. The auditors here serve a general function for the entire system which removes them from the "employed by any retail or service establishment" classification and places them squarely into the stream of interstate commerce within the intent and literal terms of the Act. The auditors' duties are functionally related to the entire business of the Kroger Company, regardless of the fact that their services are performed mainly inside retail stores.

The burden here rested upon the Kroger Company to establish that the auditors in question came within the purview of the exemption. Walling v. General Industries Co., 1947, 330 U.S. 545, 548, 67 S.Ct. 883, 91 L.Ed. 1088; Smith v. Porter, 8 Cir., 1944, 143 F.2d 292, 294. The exemption itself must be narrowly construed. A. H. Phillips, Inc. v. Walling, 1945, 324 U.S. 490, 493, 65 S.Ct. 807, 808, 89 L.Ed. 1095:

"Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people."

We think that the Kroger Company has failed to discharge the burden of proof imposed upon it. Walling v. General Industries Co., supra.

Reliance is had herein on an Administrator's interpretative bulletin of 1944, wherein it was indicated that traveling auditors under the facts given there would be included in the exemption. The Administrator's interpretative bulletins carry weight but are not controlling. Skidmore v. Swift & Co., 1944, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124. Furthermore, that particular bulletin was issued prior to the 1949 amendment. Currently an interpretative bulletin issued on October 28, 1950, subsequent to the 1949 amendment indicates a view contrary to that of the trial court. Title 29 C.F.R. § 779.4 (Supp.1957):

"Since the exemptions by their terms apply to the employees 'employed by' the exempt establishment, it follows that those exemptions will not extend to other employees who may actually be working in the establishment but who are not employed 'by' the exempt establishment. Thus traveling auditors, manufacturers' demonstrators, display window arrangers, sales instructors, etc., who are not employed

'by' an exempt establishment in which they work will not be exempt merely because they happen to be working in such an exempt establishment. * * * The same would be true of an employee of the central offices of a chain-store organization who performs work for the central organization on the premises of an exempt retail outlet of the chain."

Here the fact that the branch office sends traveling auditors into the various stores to make their audits does not exempt the auditors from the Act merely because they happen to be working in but are not employed by exempt establishments. We accordingly hold that the auditors are not exempt within the purview of 29 U.S.C.A. § 213(a)(2).

Reversed and remanded.