**WILLMARK SERVICE SYSTEM, INC.,**
Appellant,

v.

**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor,**
Appellee.

**No. 17073.**

United States Court of Appeals
Eighth Circuit.
May 16, 1963.

Jules K. Lindenberg, New York City, and Richard A. Moore, and A. Patrick Leighton, of Faricy, Moore, Costello & Hart, St. Paul, Minn., on the brief, for appellant.

Sylvia S. Ellison, Attorney, U. S. Dept. of Labor, Washington, D. C., Charles Donahue, Solicitor of Labor, Bessie Margolin, Associate Solicitor, Caruthers G. Berger, Attorneys, U. S. Dept. of Labor, Washington, D. C., and Herman Grant, Regional Attorney, U. S. Dept. of Labor, Chicago, Ill., on the brief, for appellee.

Before SANBORN and BLACKMUN, Circuit Judges, and STEPHENSON, District Judge.

SANBORN, Circuit Judge.

This is an appeal by Willmark Service System, Inc. (Willmark), of New York, from a judgment in favor of the Secretary of Labor in an action brought by him against it, under 29 U.S.C. § 217, alleging violations of the minimum wage, overtime and record-keeping provisions [1] of the Fair Labor Standards Act of 1938, as amended,[2] 29 U.S.C. § 201 et seq., and asking for an injunction. The Secretary's claim was that Willmark had employees at its branch office in Minneapolis, Minnesota, known as shoppers and supervisors, who were "engaged in commerce" and "in the production of goods for commerce" within the meaning of the Act, and with respect to whom Willmark had not observed the wage, hour and record-keeping requirements of the Act. Willmark denied that the employees in suit were engaged in commerce or in the production of goods for commerce, and alleged that it was, by virtue of § 13(a) (2) of the Act, 29 U.S.C. § 213(a) (2),[3] an exempt retail or service establishment. It was undisputed that Willmark had not conformed to the wage, hour and record-keeping requirements of the Act with respect to these employees during workweeks when their activities were entirely confined to Minnesota, but had substantially complied with such requirements when their work required travel across State lines.

The following issues were tried to the District Court: 1. Were the shoppers and supervisors of Willmark at its Minneapolis branch engaged in commerce?[4] 2. Were they engaged in the production of goods for commerce? 3. If otherwise covered by the Act, were they employees of an exempt "retail or service establish-

1. §§ 15(a) (1), 15(a) (2), 15(a) (5), 6, 7, 11(c); 29 U.S.C. §§ 215(a) (1), 215 (a) (2), 215(a) (5), 206, 207, 211(c).

2. Ch. 676, 52 Stat. 1060; ch. 736, 63 Stat. 910.

3. 29 U.S.C. § 213(a); 63 Stat. 917, § 13 (a):
"Sec. 13. (a) The provisions of sections 6 and 7 shall not apply with respect to * * * (2) any employee employed by any retail or service establishment, more than 50 per centum of which establishment's annual dollar volume of sales of goods or services is made within the State in which the establishment is located. A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry; * * *."

4. Willmark contends that "The issues before this court involve only the activities of shoppers and supervisors during weeks in which they remain within Minnesota." The trial judge found it "necessary to consider the over-all picture of defend-

**488**

ment" by virtue of § 13(a) (2) of the Act, 29 U.S.C. § 213(a) (2)? 4. Were certain "free-time" periods of these employees working time under the Act?

The basic facts were undisputed and largely stipulated. Judge Nordbye, the trial judge, filed a memorandum decision (215 F.Supp. 577), supplemented by detailed Findings of Fact and Conclusions of Law. Every issue was thoroughly explored and decided in favor of the Secretary. The decision of the trial judge contains an adequate and accurate statement of the facts, of his views of the applicable law, and of his ultimate conclusions. Nothing could be accomplished by merely restating, copying, or paraphrasing what has already been accurately and understandingly said by the trial judge. The Fair Labor Standards Act has recently been exhaustively analyzed, interpreted, examined and re-examined by this Court. See Mitchell v. Kroger Company, 8 Cir., 248 F.2d 935; Goldberg v. Wade Lahar Construction Company, 8 Cir., 290 F.2d 408, certiorari denied 368 U.S. 902, 82 S.Ct. 176, 7 L.Ed.2d 96. We shall confine ourselves, so far as possible, to a concise statement of our views with respect to the questions for decision.

Willmark is an organization which operates throughout the United States and parts of Canada. Its business is, and has been for many years, to furnish to mercantile establishments a "shopping service" for the purpose of keeping them informed as to the honesty and efficiency of their sales people. It also furnishes some other related services. Its central and executive offices are in New York City. It has 29 branches located in 23 States, 78 employees at its New York City office, and a total of 350 at its various branches. The annual gross income of Willmark is more than three million dollars. Its activities are administered and directed from its main office in New York. Its customers are

billed from there, and send their payments there.

Willmark is licensed as a detective agency in Minnesota and in other states where the laws require it. In its Minneapolis branch it has a manager, a bookkeeper, a stenographer, a part-time clerk, two supervisors, and three shoppers. The branch is financed from the home office. The local branch manager gives daily instructions to the local supervisors, copies of which are mailed to the New York office. That office regularly communicates by mail, telephone and telegraph with the branch managers.

The shoppers and supervisors at the Minneapolis branch made investigations of the sales people of Willmark's customers at their respective establishments in Minnesota, Iowa, parts of Canada, and until 1959 in Wisconsin. They work in crews of three, consisting of a man supervisor and two women shoppers. For the purpose of obtaining information as to the courtesy, efficiency, ability and honesty of the sales people whom they undertake to investigate, the members of the crew enter the establishment in the guise of ordinary shoppers, and act as such during their stay. Each member makes mental note, while in the establishment, of anything he or she observes and thinks would be of concern or interest to the customer for whom the investigation is being conducted. After the crew has left the establishment, each member makes a separate written report, usually upon forms sent to Willmark's Minneapolis branch from the New York office. A copy of the report is usually left with a representative of the customer. If the home office of the customer is not in the same location as the establishment investigated, the report is mailed by Willmark's Minneapolis branch office to the customer at its home office, whether in or outside the state of Minnesota.

ant's nation-wide and Canadian activities and the relation of the local investigative employees thereto in determining whether or not these employees are under the

Act." We agree that the issue of coverage was not to be determined from the employees' Minnesota activities considered in isolation.

If a shopper or supervisor, while investigating an establishment, observes that a sales clerk has been guilty of an irregularity, and if that is verified, a violation report is made out, giving the details. This is furnished to the manager of the establishment, and copies are mailed by the Minneapolis branch of Willmark to the home office of the customer, and to the home office of Willmark, where the report becomes a part of the "Employees Information File" in that office. The file contains hundreds of thousands of records listing the names of persons who have, by Willmark shoppers and supervisors, been found to have committed irregularities. The information contained in the file is made available to Willmark's customers.

A substantial percentage of all reports prepared by the Minneapolis shoppers and supervisors are, when prepared, destined for interstate transmission. When these employees, in the course of their work, purchase merchandise from a customer's store, it is delivered to Willmark's Minneapolis branch office, which returns it to the customer at its home office or its central warehouse, whether within or without the state of Minnesota. One of the findings of fact of the trial court was: "The activities of defendant's Minneapolis branch shoppers and supervisors are an integral part of the defendant's nation-wide business. Their activities directly and vitally relate to defendant's interstate activities."

The defendant argues, in substance, that the District Court erred: 1. In admitting, over objection, evidence as to the activities of Willmark and its customers. 2. In determining (a) that the shoppers and supervisors at the Minneapolis branch were engaged in the production of goods for commerce, (b) that they were engaged in commerce, (c) that the services rendered by them are not within the terms or the spirit of

the exemption provided in § 13(a) (2) of the Act, and (d) that the "free-time intervals imposed on the shoppers" when temporarily idle during their workdays constituted "hours worked".

The trial court, in this nonjury case, could not have committed reversible error in receiving, over objection, incompetent evidence. In Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377, 379, it is said:

"In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made."

See, also, Collins v. Owen, 8 Cir., 310 F.2d 884, 885.

It is our opinion that, under teachings of the Supreme Court and of this Court,[5] there was an adequate basis for the determination of the trial court that the shoppers and supervisors of the Minneapolis branch of Willmark were within the coverage of the Fair Labor Standards Act, as being engaged in commerce and in the production of goods for commerce. This case, as we see it, differs in no controlling respect, as to the question of coverage, from the case of Mitchell v. Sorvas, D.C.W.D.Pa., 182 F.Supp. 800, which was decided by the Honorable Wallace S. Gourley, Chief Judge of the District Court for the Western District of Pennsylvania. The defendant, Sorvas, had a "shopping service" like that of Willmark for investigating, on behalf of

5. Mitchell v. C. W. Vollmer & Co., Inc., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L. Ed.2d 243; Mitchell v. Kroger Company, 8 Cir., 248 F.2d 935; Durkin v. Joyce Agency, Inc., D.C.N.D.Ill., 110 F.Supp. 918, affirmed Mitchell v. Joyce Agency, Inc., 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740.

subscribers, the honesty and efficiency of their sales people. Sorvas employed shoppers and supervisors who worked in crews conducting shopping investigations. They operated in substantially the same way as the Willmark crews. The Sorvas operation made similar use of interstate facilities for travel and for transmission of reports and other communications in carrying on business. The Secretary of Labor brought an action against Sorvas on the claim that his shoppers and supervisors were covered by the Act, and that it was not being complied with. Judge Gourley determined that Sorvas was engaged in commerce and in the production of goods for commerce,[6] but that his sales of services were recognized as retail sales in the shopping service industry, and that his business, "as a retail and service establishment," was exempt from the requirements of the Act by virtue of § 13(a) (2).

The Secretary appealed from Judge Gourley's decision, and the Court of Appeals for the Third Circuit, Goldberg v. Sorvas, 294 F.2d 841, reversed on the ground that Sorvas did not qualify for exemption as a "retail or service establishment" under § 13(a) (2). The correctness of Judge Gourley's ruling with respect to the shoppers and supervisors being engaged in commerce was not questioned on appeal. (Page 844 of 294 F.2d.) The Sorvas case is authority for the proposition that employees such as the shoppers and supervisors at Sorvas or Willmark are not employees of an exempt "retail or service establishment" under § 13(a) (2), for the reason that such an establishment was not exempt prior to the 1949 amendment of that section, and Congress, in amending the section, had no intention "to broaden the fields of business enterprise to which the exemption would apply." (See Mitchell v. Kentucky Finance Co., Inc., 359 U.S. 290, 294, 79 S.Ct. 756, 759, 3

L.Ed.2d 815.) The Sorvas case supports the determination of the trial court in the instant case that the Willmark employees in suit are covered by the Act.

It is argued on behalf of Willmark that the ruling of the Third Circuit in the Sorvas case is based upon a misconception of the decision in Mitchell v. Kentucky Finance Co., Inc., supra, and is entirely unsupported otherwise. It is also contended that the Sorvas decision was based upon an inadequate record, lacking "persuasive evidence clarifying and explaining the nature of the shopping services and their background and growth," which was "no doubt instrumental in compelling the conclusion reached by the Court of Appeals." It is true that the instant case was tried with meticulous care and is before us on an excellent record. The record in the Sorvas case, however, adequately presented the same problem with which we are concerned. That case was, in our opinion, correctly decided, and we find no justification for refusing to follow it.

Moreover, in Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393, we are told that the exemptions of § 13 of the Act "are to be narrowly construed against the employers seeking to assert them" and "limited to those establishments plainly and unmistakably within their terms and spirit." Willmark, rather obviously, does not qualify as an establishment "plainly and unmistakably" within the terms and sprit of § 13(a) (2).

We find nothing to warrant a rejection of the conclusion reached by the District Court that certain comparatively brief intervals of so-called "free time" forced upon the shoppers during their workdays, which intervals were fortuitous and of no use or benefit to them, were includable in working time.

The judgment appealed from is affirmed.

---

6. The Judge did not specifically find that the shoppers and supervisors were so engaged, but that is necessarily to be inferred from his opinion, and was so considered by the United States Court of Appeals for the Third Circuit on appeal.