W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Ramona Hayes HEALY and John F. Healy, individuals and partners, doing business as Vanderbilt Better Tours and Hayes-Healy Travel Bureau, Defendants.

Civ. A. No. 61 C 700.

United States District Court
N. D. Illinois, E. D.
Feb. 20, 1964.

©⚏1193

Charles Donahue, Sol., Herman Grant, Regional Attorney, Paul E. Myerson, Attorney, Donald E. Elisburg, Chicago, Ill., Attorney, for plaintiff.

Ramona Hayes Healy, Chicago, Ill., for defendants.

ROBSON, District Judge.

## JUDGMENT

Plaintiff, W. Willard Wirtz, Secretary of Labor, United States Department of Labor, having filed his complaint, and the defendants, Ramona Hayes Healy and John F. Healy, individuals and partners, doing business as Vanderbilt Better Tours and Hayes-Healy Travel Bureau, having filed their answer to said complaint and the Court having considered the evidence and having made and entered appropriate Findings of Fact and Conclusions of Law, and sufficient reason therefor appearing,

Now, therefore, upon motion of the attorneys for plaintiff, it is

Ordered, adjudged, and decreed that defendants, their agents, servants, employees, and those persons in active concert or participation with them who re-

ceive actual notice of this judgment by personal service or otherwise be, and they hereby are, permanently enjoined and restrained from violating the provisions of Sections 15(a) (1), 15(a) (2), and 15(a) (5) of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq.), hereinafter referred to as the Act, in any of the following manners:

(1) The defendants shall not, contrary to Section 6 of the Act, pay any of their employees, including tour escorts, who in any workweek is engaged in commerce or in the production of goods for commerce within the meaning of the Act, wages at rates less than those prescribed by Section 6 of the Act (i. e., $1.25 an hour after September 2, 1963), or any other minimum rate which may be made applicable by amendment to the Act. The provisions of this paragraph shall not prevent defendants from paying to any of their employees wages authorized as to such employees by a special certificate issued and in effect under Section 14 of the Act;

(2) The defendants shall not, contrary to Section 7 of the Act, employ any of their employees, including tour escorts, who in any workweek is engaged in commerce or in the production of goods for commerce, within the meaning of the Act, for any workweek longer than forty hours, unless such employee receives compensation for his employment in excess of forty hours at a rate not less than one and one-half times the regular rate at which he is employed;

(3) The defendants shall not fail to make, keep, and preserve records of their employees, including tour escorts, and of the wages, hours, and other conditions and practices of employment maintained by them as prescribed by regulations of the Administrator of the Wage and Hour Division, United States Department of Labor, issued, and from time to time amended, pursuant to Section 11(c) of the Act, and found in 29 CFR 516;

(4) The defendants shall not, contrary to Sections 11(a), 11(c), and 15(a) (5)

of the Act, fail to permit the authorized and designated representative of the Administrator of the Wage and Hour Division, United States Department of Labor, to inspect and transcribe therefrom, the records of their employees, including tour escorts, and the wages, hours, and other conditions and practices of employment maintained by them as prescribed by the regulations issued pursuant to Section 11(c) of the Act, and found in 29 CFR 516;

(5) The defendants shall not, contrary to Section 15(a) (1) of the Act, transport, offer for transportation, ship, deliver, or sell in commerce, as defined by the Act, or ship, deliver, or sell with knowledge that shipment or delivery or sale thereof in commerce is intended, any goods in the production of which any of their employees, including tour escorts, have been employed at rates of pay less than those provided by Sections 6 or 7 of the Act.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court having considered the pleadings, the pre-trial conferences, the pre-trial order, the stipulations of the parties, the exhibits, the depositions, and the briefs and arguments submitted by respective counsel, and being fully advised in the premises, does hereby now make and enter, pursuant to Rule 52 of the Federal Rules of Civil Procedure, its Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. The defendants Ramona Hayes Healy and John F. Healy, individuals and partners, doing business as Vanderbilt Better Tours and Hayes-Healy Travel Bureau, are engaged in the travel agency business. The defendants obtain transportation, hotel and related accommodations for persons desiring to travel to various places and points of interest throughout the United States, Canada, and Europe. The defendants also operate and manage pre-paid conducted travel tours to places and points of interest throughout the United States, Canada,

and Europe. These tours, known as the "Vanderbilt Better Tours," include both escorted and nonescorted tours. The defendants arrange, design, plan, and schedule the tours, and the tours are furnished to travelers as a "package." The price of each "package" tour includes such things as: the cost of transportation; hotel and other living accommodations; specified meals; designated sightseeing and side trips; enumerated tips; and the services of a tour manager, usually referred to as a "tour escort."

2. Defendants' office employees sell Vanderbilt Better Tours, and arrange for transportation, living accommodations, meals, and related facilities for travelers on defendants' tours, and for persons traveling independently. In connection with such activities, these employees order, purchase, receive, distribute and otherwise handle tickets, vouchers, coupons, and documents relating to transportation, living accommodations, meals, and related facilities included with defendants' tours. They also transmit and receive reports, documents, and the like to and from escorts on defendants' tours.

3. Defendants employ persons known as "tour escorts." These tour escorts are trained by defendants and are assigned to conduct one or more of defendants' escorted Vanderbilt Better Tours. These tour escorts travel with their assigned tour and handle all the details of such tour in accordance with specific instructions from defendants concerning the tour escorts' functions, duties, responsibilities, and activities. The tour escort, depending on the particular requirements of the assigned tour, starts and terminates his activities in connection with such tour in Chicago, or at a specified point enroute. The number of persons traveling with the escort on a particular tour usually averages about 15 or 20 persons.

4. The activities performed by the tour escort on defendants' tours include the following:

(a) The tour escort, who starts with the tour in Chicago, Illinois arrives at the designated railroad station approximately two hours before train time on the day of departure. He meets the passengers traveling on his tour as they begin to arrive, examines their baggage to see that it has been properly tagged and identified and, if necessary, tags and marks such baggage. The tour escort obtains all the railroad tickets from the defendants, and makes sure that all passengers have boarded the train and are settled in their assigned accommodations. On some tours, all tour members, including the tour escort, travel entirely by coach. On other tours, some of the tour members travel by Pullman.

(b) The tour escort, who joins the assigned tour enroute arrives at the designated rendezvous prior to the arrival of the incoming train, ascertains the estimated time of arrival, and awaits its arrival. When the tour arrives, the tour escort obtains from the designated representative of defendants the transportation tickets, vouchers, lists, documents, and instructions of defendants for the members of the tour. The tour escort examines and compares the tickets, vouchers and the like with the lists supplied by defendants, and reports any errors or omissions to the appropriate representative of the defendants. The tour escort counts the members of his tour and the baggage belonging to these members. The tour escort examines the baggage identification markings and makes any corrections necessary. The tour escort holds the transportation tickets for the members of the tour and presents them to the appropriate railroad official on request.

(c) After the tour has departed the station, the tour escort meets with the members of his tour, introduces himself and each member of his tour, distributes brochures and printed information concerning the tour, explains the layout of the train, and answers any questions which the tour members may have. The tour escort is available to the members of his tour at all times while on the train.

Where dining car meals are included on the tour, the tour escort arranges for

them with the dining car steward, advises the tour members as to the hour for eating, audits the signed meal checks, and pays the dining car steward by voucher for the meals served; where the cost of the meal exceeds the cost provided for on the tour, the escort makes certain that these additional costs are not charged to the defendants.

When additional passengers join the tour enroute, the tour escort detrains, examines the transportation tickets of the new arrivals, inspects, marks and identifies the baggage of the new arrivals, assists in loading their baggage on the train, and assists them in boarding the train. The tour escort gathers the transportation tickets of the new arrivals, presents the necessary tickets to the train conductor, distributes brochures and printed information concerning the tour and introduces the new arrivals to the other members of the tour. In case of illness of a tour member, the tour escort takes all necessary steps for the cancellation of the tour member's space and for removal of the tour member's baggage.

(d) Prior to the arrival at a scheduled stop on the tour, the tour escort sees that all tour members have had an opportunity to eat the appropriate meal and alerts the tour members preparatory to detraining. The tour escort obtains the return of any transportation tickets not in his possession, pays the dining car steward for any meals consumed by the tour members prior to detraining, arranges to remove the tour members and their baggage from the train, and tips the coach porter for the removal of such baggage. Upon arrival at this scheduled stop, the tour escort counts the tour members as well as their baggage, and makes sure that both the tour members and their baggage have left the train.

(e) After leaving the train, the escort arranges transportation from the railroad station to and from eating establishments, living accommodations, sightseeing activities, entertainment activities, or other transportation facilities. The tour escort supervises this transfer of tour members and their baggage, pays the costs involved in such transfer, and pays the admission fees or other costs necessary to accomplish the activity scheduled on the tour. The tour escort sees that all tour members and their baggage arrive at the designated hotel and are assigned to the proper living accommodations. After room assignments have been made, the tour escort remains in the lobby for approximately thirty minutes during which time the tour members can register complaints, request changes in room assignments, report misplaced baggage, request additional sightseeing trips, and ask questions. The tour escort, upon receipt of any such communication from the tour members, endeavors to accomplish the result sought by the tour member.

(f) The tour escort, during the stay at a scheduled stop on the tour, pays for all scheduled activities on the tour, sees that transportation is available to accomplish such activities, and sees that the tour members are alerted in time to participate in such scheduled activities. On scheduled sightseeing tours, the tour escort may either accompany the tour members or may await their return from such sightseeing tour.

(g) When the tour has completed its stay at the scheduled stop on the tour, the tour escort alerts the tour members in sufficient time to check out of the hotel and reach the train or other transportation facility on schedule. The tour escort audits and pays the hotel bills of the tour members, arranges and pays for the transfer of the tour members and their baggage, sees that all the tour members and their baggage arrive at the transportation facility, sees that the tour members have boarded such transportation facility, and that their baggage has been loaded thereon.

(h) Upon completion of a tour, the tour escort prepares and forwards to defendants' Chicago office a final report covering the activities of his tour. This report includes a summary of unusual occurrences, accidents involving tour members, unsatisfactory hotel accommoda-

tions or meals encountered enroute, suggestions for improving the tour, an itemized account of all expenses, a list of passengers and their addresses, a list of extra sightseeing tours sold by the tour escort, a copy of each voucher used enroute, a list of any cash collected for extra baggage or accommodations, and a time sheet which ostensibly reflects the number of hours worked during the course of the tour.

All of the activities performed by defendants' tour escorts are described in considerable detail in paragraph 9 of the Stipulation of Facts filed herein on July 24, 1963.

5. Defendants have considered as "hours worked" only the time spent by their tour escorts in the physical performance of enumerated tasks such as:

(a) working at depots prior to the departure of their assigned tour,

(b) making announcements and giving instructions on the train,

(c) checking tickets with conductors, pursers, and railroads,

(d) exchanging, reevaluating, and picking up transportation tickets on certain tours,

(e) paying bills, charges, admissions, and issuing vouchers covering enumerated items on the tours,

(f) transferring and counting baggage at depots,

(g) getting on and off trains, boats, or buses with baggage,

(h) checking tour members in and out of hotels,

(i) seeing tour members off on sightseeing trips, and

(j) conducting certain specified "side trips" and "walks" on certain tours.

6. Defendants have not considered or recorded as "hours worked" the time spent by their tour escorts in performing the following activities:

(a) riding on trains, boats, buses, or other conveyances in the company of members of their tour,

(b) accompanying members of their tour on scheduled sightseeing tours where the lecturing is done by persons other than the tour escort,

(c) accompanying members of their tour at scheduled amusement or recreational facilities,

(d) awaiting the arrival and return of members of their tour on scheduled sightseeing trips or at scheduled places of entertainment and amusement,

(e) awaiting the arrival of members of their tour at designated places enroute,

(f) arranging extra sightseeing or evening tours for members of their tour,

(g) preparing reports covering their assigned tour for transmission to defendants,

(h) traveling on behalf of defendants from the place of termination of one tour to the place for beginning another tour, and

(i) attending defendants' escort school.

7. The time spent by the tour escorts in performing the activities described in Findings of Facts Nos. 3 and 4, hereof, exceeded 40 hours in many workweeks; the tour escorts did not receive additional compensation as overtime for the hours in excess of 40 in the workweek. At least for the time spent in attending defendants' escort school, the tour escorts received no wages.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this cause of action pursuant to the provisions of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, as amended; 29 U.S.C. § 201 et seq.), hereinafter referred to as the Act.

2. Each of defendants' male and female tour escorts described in Finding of Fact No. 3, hereof, is an "employee" of the defendants within the meaning of Sections 3(e) and 3(g) of the Act. United States v. Silk and Harrison v. Greyvan Lines, Inc., 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Rutherford Food Corp. v. McComb, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772; Goldberg v. Whitaker House Coop., 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100; Wabash Radio Corp. v. Wal-

ling, 162 F.2d 391 (C.A.6); Walling v. Sondock, 132 F.2d 77 (C.A.5), certiorari denied, 318 U.S. 772, 63 S.Ct. 769, 87 L. Ed. 1142; Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118.

■ 3. Defendants' office employees and tour escorts, described in Findings of Facts Nos. 2 and 3, inclusive, hereof, are engaged in commerce and in the production of goods for commerce within the meaning of Sections 3(b), 3(i), 3(j), 6 and 7 of the Act. Mitchell v. C. W. Vollmer & Co., Inc., 349 U.S. 427, 75 S.Ct. 860, 99 L.Ed. 1196; Mitchell v. Lublin, McGaughy & Associates, 358 U.S. 207, 79 S.Ct. 260, 3 L.Ed.2d 243; Mitchell v. E. G. Shinner & Company, Inc., et al., 221 F.2d 260 (C.A.7); Bell v. Porter, 159 F. 2d 117 (C.A.7), certiorari denied, 330 U. S. 813, 67 S.Ct. 1092, 91 L.Ed. 1267; Mitchell v. Pilgrim Holiness Church Corp., 210 F.2d 879 (C.A.7), certiorari denied, 347 U.S. 1013, 74 S.Ct. 867, 98 L.Ed. 1136; Caserta v. Home Lines Agency, Inc., D.C., 172 F.Supp. 409, affirmed 273 F.2d 943 (C.A.2); Donovan v. Shell Oil Co., Inc., 168 F.2d 229 (C.A. 4); Reck v. Zarnocay, 264 App.Div. 520, 36 N.Y.S.2d 394, 2 WH Cases 994, 1 WH Cases 1105; Mitchell v. Glader Corp., 31 Labor Cases § 70,225 (N.D.Ill.); Colbeck v. Dairyland Creamery Co., 70 S.D. 283, 17 N.W.2d 262 (S.Ct.S.D.) 5 WH Cases 74; Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442; Mitchell v. Aetna Finance Co., D.C., 144 F.Supp. 528, affirmed 247 F.2d 190 (C.A. 1); Mitchell v. Kroger Co., 248 F.2d 935 (C.A.8); Durkin v. Joyce Agency, Inc., D.C., 110 F.Supp. 918, affirmed per curiam, Mitchell v. Joyce Agency, Inc., 348 U.S. 945, 75 S.Ct. 436, 99 L.Ed. 740.

■ 4. The exemption provided by Section 13(f) of the Act is inapplicable to a tour escort of defendants who, during a particular workweek, performs services both in a workplace within the United States and in a workplace within a foreign country, such as Canada. Thus, when a tour escort of defendants spends part of a workweek with a tour in the United States, it makes no difference where the remainder of such work in that week is performed; the tour escort is entitled to the benefits of the Act for the entire week. Vermilya-Brown Co., Inc., v. Connell, 335 U.S. 377, 69 S.Ct. 140, 93 L.Ed. 76; Interpretative Bulletin, Title 29, Part 776, Code of Federal Regulations, Section 776.7, footnote 20, page 6.

■ 5. The exemption provided by Section 13(f) of the Act is applicable to a tour escort of defendants during any workweek in which the tour escort performs all of his work exclusively in a foreign country. Vermilya-Brown Co., Inc., v. Connell, supra; see United States v. Spelar, 338 U.S. 217, 70 S.Ct. 10, 94 L.Ed. 3; Foley Bros., Inc., v. Filardo, 336 U.S. 281, 69 S.Ct. 575, 93 L.Ed. 680.

■ 6. The exemption provided by Section 13(a) (2) of the Act with respect to any employee employed by a retail or service establishment is inapplicable to defendants' office employees employed at defendants' Chicago office and to defendants' tour escorts employed on Vanderbilt Better Tours. Travel Agencies are classified in the transportation industry to which no retail concept applies. Caserta v. Home Lines Agency, Inc., supra; Standard Industrial Classification Manual, Section 4721; Senate Report No. 145, 87th Cong., 1st Sess., p. 31, U.S.Code Congressional and Administrative News 1961, p. 1620; Interpretative Bulletin, Title 29, Part 779, Code of Federal Regulations, Section 779.317.

■ 7. Time spent by the tour escorts of defendants in performing the activities described in Findings of Facts Nos. 3 and 4, hereof, and discussed in Findings of Facts Nos. 5 and 6, hereof, constitutes working time—"hours worked"—compensable under the Act. These activities were performed for the primary benefit and under the instructions, direction, and control of defendants. Throughout the performance of each of

the aforesaid activities, the tour escorts were required by defendants to be at designated places, and were expected by defendants to perform specified activities. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515; Tennessee Coal, Iron & Railroad Co. v. Muscoda Local No. 123, 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118; Central Missouri Telephone Co. v. Conwell, 170 F.2d 641 (C.A. 8); Handler v. Thrasher, 191 F.2d 120 (C.A.10); Skidmore v. Swift & Co., 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124; Goldberg v. Willmark Service System, Inc., 215 F.Supp. 577, (D.Minn.), affirmed Willmark Service System, Inc. v. Wirtz, 317 F.2d 486 (C.A.8), certiorari denied 375 U.S. 897, 84 S.Ct. 170, 11 L. Ed.2d 125.

8. The rulings and interpretations of the Administrator, Wage and Hour and Public Contracts Divisions, United States Department of Labor, are entitled to great weight and the Court may properly resort to them for guidance. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682; Skidmore v. Swift & Co., supra; Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383; Maneja v. Waialua Agricultural Co., Ltd., 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040; Boutell v. Walling, 327 U.S. 463, 66 S.Ct. 631, 90 L.Ed. 786. After giving due consideration to the Administrator's Interpretative Bulletin, Part 785, and the enforcement policy therein stated, the Court concludes that the following time need not be counted as hours worked: bona fide meal periods of 30 minutes or more and bona fide regularly scheduled sleeping periods of not less than 5 hours or more than 8 hours per day, where an expressed or implied agreement is present; and bona fide periods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes. See Interpretative Bulletin, Title 29, Part 785, Code of Federal Regulations, Sections 785.16, 785.19, and 785.20–785.22, and cases cited therein. Cf. Mitchell v. Greinetz, 235 F.2d 621, 61 A.L.R.2d 956 (C.A. 10); Mitchell v. Turner, 286 F.2d 104 (C.A.5).

9. The defendants have violated Sections 6, 7, 11, 15(a) (1), 15(a) (2), and 15(a) (5) of the Act.

Let judgment be entered in accordance with the foregoing Findings of Fact and Conclusions of Law.